**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Filed Electronically**

**CRIMINAL ACTION NO. 21-CR-285 (JEB)**
**UNITED STATES OF AMERICA,**                                         **PLAINTIFF,**

**vs.**

**DAMON MICHAEL BECKLEY,**                                         **DEFENDANT.**

## DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Comes the defendant, Damon Beckley ("Defendant," or, in the alternative, "Mr. Beckley"),

by counsel, and respectfully requests this Honorable Court to dismiss Count One of the Indictment.

In support, the Defendant states as follows:

## I.  INTRODUCTION

Count One of the Indictment charges Mr. Beckley as follows:

> On or about January 6, 2021, within the District of Columbia and
> elsewhere, **DAMON BECKLEY,** attempted to, and did, corruptly
> obstruct, influence, and impede an official proceeding, that is, a
> proceeding before Congress, by entering and remaining in the
> United States Capitol without authority, committing an act of civil
> disorder, threatening Congressional officials, and engaging in
> disorderly and disruptive conduct.  DN 10.  (Emphasis in original).

The text, structure and history of 18 U.S.C. §1512(c) supports a narrow construction of this

statute to hold individuals responsible for destroying documents, records, and other objects in order

to corruptly obstruct, impede or influence an official proceeding.  Nothing in Count One of the

Superseding Indictment alleges, let alone implies, that Mr. Beckley took some action with respect

to a document, record, or other object to corruptly obstruct, impede or influence Congress's

certification of the electoral vote.  For this reason alone, Count One of the Indictment should be dismissed.

As a separate and distinct ground, Mr. Beckley moves to dismiss Count One because 18 U.S.C. 1512(c) by its plain language, does not criminalize the obstruction of legislative action by Congress.  As the Ninth Circuit has carefully considered and recognized, based upon the plain language of the statute, an offense under Section 1512(c) does not prohibit the obstruction of every governmental function; it only prohibits the obstruction of proceedings such as a hearing that takes place before a tribunal.  *See U.S. v. Ermoian,* 752 F.3d 1165, 1171 (9th Cir. 2013).  Any alleged obstruction of the certification of an Electoral College vote is outside of the reach of Section 1512(c).

## II.   STANDARD OF REVIEW

A defendant may move to dismiss an indictment on the grounds that it fails to state an offense.  Fed. R. Crim. P. 12(b)(3)(B).  In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true."  *U.S. v. Syring,* 522 F. Supp. 2d 125, 128 (D.C. Cir. 2007); and *U.S. v. Sampson,* 371 U.S. 75, 78 (1962).  Accordingly, "the Court cannot consider facts beyond the four corners of the indictment."  *U.S. v. Ring,* 628 F. Supp.2d 195, 204 (D.C. Cir. 2009) (internal quotations omitted).

## III.   ARGUMENT

### A.  Law of Statutory Construction

To determine legislative intent, courts "always, [ ] begin with the text of the statute."  *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shineski,* 709 F.3d 29, 33 (D.C. Cir. 2013).  "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain…the sole function of the courts is to enforce it according

to its terms." *U.S. v. Hite,* 769 F.3d 1154, 1160 (D.C. Cir. 2014), quoting *Caminetti v. U.S.,* 242 U.S. 470, 485 (1917) (internal quotes omitted).  The Court must give effect to every word in a statute.  *Setser v. U.S.,* 566 U.S. 231, 239 (2012).  In addition to the words of the statute, the Court must look to the statute's structure.  *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 455 (1993) ("In expounding a statute, we must not be guided by a single sentence of a member of a sentence, but look to the provisions of the whole law, and to its object and policy").

"The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite, supra* at 1160.  Extrinsic materials are to be considered if they "shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapath Servs., Inc.,* 545 U.S. 546, 568 (2005).

"[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *U.S. v. Lanier,* 520 U.S. 259, 268 (1997).  Federal Courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute." *U.S. v. Aguilar,* 515 US. 593, 600 (1995).  Such restraint is urged by the Supreme Court "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Id.* at 600 (citations omitted).  "Grievous" ambiguities as to the meaning of terms in a statute, i.e. when the Court "can make no more than a guess as what Congress intended," must be construed against the Government in favor of a Defendant under the rule of lenity.  *See, Schular v. U.S.,* 140 S.Ct. 779, 788 (2020).  "Under the rule of lenity, courts construe penal laws strictly and resolve ambiguities in favor of the defendant." *U.S. v. Nasir,* 17 F.4th 459, 472 (3rd Cir. 2021).  But, in

doing so, such construction cannot "conflict with the implied or expressed intent of Congress."

*Liparota v. U.S.,* 471 U.S. 419, 427 (1985).

**B. The Text and Structure of 18 U.S.C. §1512(c)(2) Indicates that it is Narrow in Scope.**

18 U.S.C. §1512(c) provides:

> (c)  Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2)  otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

At issue here are the terms "otherwise" and "official proceeding." These terms are limited in scope to records, documents and similar objects and quasi-judicial or judicial proceedings, respectively. Each of these terms will be analyzed in turn below.

**1. The Term "Otherwise" is a Residual Clause for the Prohibitions Contained in 18 U.S.C. §1512(c)(1), Which are Limited to Corrupt Acts Involving Records, Documents and Tangible Objects.**

The prohibitions contained in 18 U.S.C. §1512(c)(1) are, with the intent to impair an object's integrity or availability for use in an official proceeding:  (1) attempt to or alter, destroy, mutilate, or conceal a record; (2) attempt to or alter, destroy, mutilate or conceal a document; or (3) attempt to or alter, destroy, mutilate, or conceal an object.     The term "otherwise" in 18 U.S.C. §1512(c)(2) links this section with 18 U.S.C. §1512(c)(1) so that (c)(2) covers similar crimes to those in section (c)(1).  18 U.S.C. §1512(c)(2) prohibits additional ways in which an individual can corruptly act on a "record, document, or tangible object" that are not covered by subsection (c)(1).

This interpretation is consistent with Supreme Court precedent, as well as, former Attorney General William Barr's and the Department of Justice's Criminal Resource Manual's interpretations of this statute.  Turning to the former, in *Begay v. U.S.,* 553 U.S. 137 (2008), the Supreme Court interpreted the term "otherwise" under the Armed Career Criminal Act ("ACCA"). That Act, in relevant part, defines a violent crime as a crime of "burglary, arson, or extortion, involves use of explosives, or *otherwise* involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. §924(e)(2)(B)(ii) (emphasis added).  The *Begay* majority held that the listed examples before the term "otherwise," "indicate[] that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'"  *Begay, supra* at 142 (emphasis added).  Justice Scalia, in his concurring opinion, described the majority's holding to "read the residual clause to mean that the unenumerated offenses must be similar to the enumerated offenses not only in the degree of risk they pose, but also 'in kind,' despite the fact that 'otherwise' means that the *common* element of risk must be present 'in a *different* way or manner.'"  *Id.* at 151 (emphasis in original).

In *Yates v. U.S.,* 574 U.S. 528 (2015), the Supreme Court examined the language of 18 U.S.C. §1519, which was enacted under the Sarbanes-Oxley Act (the same Act under which §1512(c) was enacted).  At issue there was the phrase "tangible object" as used in 18 U.S.C. §1519, which reads:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction or any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

The Court found that the words which immediately surround "tangible object" in §1519—
"falsifies, or makes a false entry in any record [or] document]"—"cabin the contextual meaning
of that term." *Yates, supra* at 543.  It went on to explain that it relies on the "principle of *noscitur
a socilis*—a word is known by the company it keeps—to 'avoid ascribing one word a meaning so
broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the
Act of Congress.sim" *Id.*  Further, it provided that a cannon related to *noscitur a socilis* is "*ejusdem
generis,* [which] counsel: '[W]here general words follow specific words in a statutory
enumeration, the general words are [usually] construed to embrace only objects similar in nature
to those objects enumerated by the preceding specific words.'"  *Id.* at 545, quoting *Wash. State
Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler,* 537 U.S. 371, 384 (2003).
Using these tools of interpretation, the Court found that "tangible object" in §1519 is
"appropriately read to refer, not to any tangible object, but specifically to the subset of tangible
objects involving records and documents, *i.e.,* objects used to record or preserve information." *Id.*
at 544 (emphasis in original).

In June of 2018, former Attorney General Barr issued a memorandum with his
interpretation of the term "otherwise" in 18 U.S.C. §1512(c)(2).  He opined:

> [I]t is clear that the use of the word 'otherwise' in the residual clause
> [of 18 U.S.C. §1512(c)(2)] expressly links the clause to the forms of
> obstruction specifically defined elsewhere in the provision.  Unless
> it serves that purpose, the word 'otherwise' does not work at all and
> is mere surplusage.  [An] interpretation of the residual clause as
> covering any and all acts that influence a proceeding reads the word
> 'otherwise' out of the statute altogether.   But any proper
> interpretation of the clause must give effect to the word 'otherwise';
> it must do some work.  *Memorandum from William Barr to Dep.
> Atty. Gens. Rod Rosenstein and Steven Engel,* June 8, 2018, at p. 4.[1]

---

[1] This document can be access at https://s3.documentcloud.org/documents/5638848/June-2018-Barr-Memo-to-DOJ-Muellers-Obstruction.pdf.

After discussing *Begay, supra* and *Yates, supra,* and how those cases emphasize that "specific examples enumerated prior to the residual clause are typically read as refining or limiting in some way the broader catch-all term used in the residual clauses," former Attorney General Bar stated:

> Consequently, under the statute's plain language and structure, the most natural and plausible reading of 1512(c)(2) is that it covers acts that have the same kind of obstructive impact as the listed forms of obstruction—i.e., impairing the availability or integrity of evidence—but cause this impairment in a different way than the enumerated actions do. *Id*.

Likewise, the Department of Justice's interpretation, as reflected in their Criminal Resource Manual discussing the application of Section 1512, is consistent with the Supreme Court and former Attorney General Barr's interpretations.

> Section 1512 of title 18 constitutes a broad prohibition against tampering with a witness, victim or informant.  It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers.  Criminal Resource Manual, CRM 1729, Department of Justice.[2]

As referenced in former Attorney General Barr's memo, the structure of the statute and the scope of §1512 also suggests that "otherwise" in subsection (c)(2) has a narrow focus.  Section 1512(a) criminalizes killing, attempting to kill, or using or threatening the use of physical force to prevent attendance or testimony at a proceeding; to prevent production of a record, document or other object at an official proceeding; or to prevent communication to law enforcement.  18 U.S.C. §1512(a)(1)-(3).  Section 1512(b) criminalizes verbal conduct that threatens or intimidates another with the intent to influence, delay or prevent testimony at an official proceeding.  18 U.S.C. §1512(b)(1)-(3).   Section 1512(d) criminalizes intentional harassment of a person, thereby

---

[2] This document can be accessed at https:www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or

hindering, delaying, preventing or dissuading them from attending or testifying at an official proceeding. 18 U.S.C. §1512(d). Sandwiched between these sections is 1512(c), which prevents the direct acts of altering, destroying mutilating or concealing records, documents, or other objects. As discussed more below, section (c) was enacted to close a loophole where the individual acted directly to destroy and did not induce or threaten others to destroy evidence.

The placement of subsection (c) in 1512, along with the words preceding and following the term "otherwise" in subsection (c)(2) demonstrate that this subsection applies to a narrow, focused range of conduct. Section (c)(1), like section (ii) of the ACCA as interpreted in *Begay, supra*, continues §1512's focus on specific and particularized actions, albeit in a slightly different matter. Instead of focusing on indirect actions, section (c)(1) and (c)(2) prohibit the direct actions of an individual that alters, destroys, mutilates, or conceals a record, document or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding.

### 2. The Term "Official Proceeding" in 18 U.S.C. §1512(c)(2) is Limited to Judicial or Quasi-Judicial Proceedings.

A review of the text and judicial interpretation of §1512, especially in light of the Supreme Court's long-standing guidance to strictly construe penal statutes, demonstrates that this statute, which punishes obstruction of "official proceedings," does not apply to Electoral College certification.

*Ermoian, supra,* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is defined in Section 1515 and used in Section 1512(c). *Emorian, supra* at 1168. Although the case considered whether a criminal investigation by the FBI was considered an "official proceeding" for purposes of the statute, the Court noted "[a]s used in the statute, the definition of the phrase 'official proceeding' depends heavily on the meaning of the word

'proceeding'" and further noted, "that the word is used—somewhat circularly—in each of the definitions for an 'official proceeding' and is key to the phrase's meaning." *Id.* at 1169.

Reviewing the plain language of Section 1515, the *Emorian* Court explained that "[s]everal aspects of the definition for 'official proceeding' suggests that the legal—rather than lay—understanding of the term 'proceeding' is implicated in the statute." *Id.* at 1170.  As the Court pointed out, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings," and not "a mere 'action or series of actions.'" *Id.,* citing "Proceeding," Oxford English Dictionary.  Moreover, the Court pointed to the fact that "the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal Government agency.'" *Id.*

The Ninth Circuit then turned to the broader statutory context, looking at Section 1515 as a whole, noting that "[t]he use of the preposition 'before' suggests an appearance in front of the agency *sitting as tribunal.*" *Id.* at 1711 (emphasis added).  The Court further looked to another circuit's interpretation of the phrase "official proceeding" and noted, "[a]s the Fifth Circuit explained when addressing this same definition, 'use [ of] the preposition 'before' in connection with the term 'Federal Government agency'…implied that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear." *Id.,* quoting *U.S. v. Ramos,* 537 F.3d 439, 462-463 (5th Cir. 2008).  Additionally, the Ninth Circuit pointed out, "[t]he use of the terms 'attendance,' 'testimony,' 'production,' and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated." *Id.* at 1172.  In conclusion, the *Ermoian* Court considered "the plain meaning of the term 'proceeding,' its use in the grammatical context of the 'official proceeding' definition, and the

broader statutory context" to hold that a criminal investigation is not an "official proceeding" under Section 1512(c).  *Id.*

Other courts agree with the interpretation in *Ermoian*.  *See U.S. v. Binette,* 828 F.Supp. 2d 402, 403-404 (D. Mass 2011) (finding that a preliminary SEC investigation did not constitute an "official proceeding" under §1512 as compelled attendance, sworn testimony, and subpoena powers had not taken effect); *see e.g. Arthur Anderson, LLP, supra* at 708 (interpreting Section 1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a] *judicial proceeding"* in order to have the "requisite intent to obstruct") (emphasis added); *U.S. v. Burge,* 711 F.3d 803, 809 (7th Cir. 2013) (Court considered the application of Section 1512 and noted "[o]bstruction of justice occurs when a defendant acts to impeded the types of proceedings that take place *before judges or grand juries*") (emphasis added); *U.S. v. Sampson,* 898 F.3d 278, 300 (2nd Cir. 2018) (noting that §1512 "broadly criminalizes various forms of witness tampering"); *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1039 (11th Cir. 2000) ("Section 1512…applies to attempts to *prevent or influence testimony* not only in federal courts but also *before Congress,* federal agencies, and insurance regulators") (emphasis added); and *U.S. v. Dunn,* 434 F. Supp.2d 1203, 1207 (M.D. Ga. 2006) ("…§1515(a)(1)…describe[s] events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, *Congressional testimony*, and insurance regulatory hearings") (emphasis added).

This interpretation, reasoning, and logic applies equally here.  Looking at Section 1512 as a whole, it is obvious that the statute solely prohibits conduct at hearings that affect the administration of justice.  *See* 18 U.S.C. §1512.  The statute repeatedly references "proceedings" in the context of investigations and legal proceedings related to a criminal investigation.  *Id.*  Even the title of the offense relates to "Tampering with a witness, victim, or informant."  *Id.*  There is

little doubt, based on the language of the statute, that the "official proceeding"—and more specifically, the "proceeding before Congress"—that was allegedly obstructed by Mr. Beckley must relate to a Congressional hearing affecting the administration of justice.

As far as the structure of the statute, Section 1512 is contained in Chapter 73 of Title 18 of the United States Code.  Examining the surrounding statutory provisions in Chapter 73 further support Mr. Beckley's interpretation of the statute at issue.  Each one of the statutes contained in Chapter 73 proscribe obstructive conduct for very specific subjects and settings related to the administration of justice.  For instance, §1501 deals with obstruction of criminal investigations. Sections 1516 through 1518 criminalize obstruction of specific types of other investigations.  *See* 18 U.S.C. §§1516 (Obstruction of a federal audit); 1517 (Obstruction of examination of financial institution); 1518 (Obstruction of investigations of health care offenses).  Section 1519 prohibits the destruction, alteration, or falsification of records during a federal investigation.

Other provisions of Chapter 73 also explicitly relate to the administration of justice.  *See* 18 U.S.C. §§1503, 1504 (Influencing or injuring a juror); 1513 (Retaliating against a witness, victim, or informant); 1521 (Retaliating against a federal judge or law enforcement officer by false claim or slander of title).  There is even a statute to prohibit "picketing or parading" near the residence of a judge, juror, witness, or court officer "with the intent of interfering with, obstruction, or impeding *the administration of justice.*"  18 U.S.C. §1507 (emphasis added).

As all these laws are related to the obstruction of the administration of justice and serve to protect participants in the administration of justice, it follows that, in order to violate Section 1512(c), there must be some allegation that the "official proceeding" allegedly obstructed was in fact related to the administration of justice.  The Congressional certification of the Electoral College is not related to the administration of justice.

In sum, Congress' certification of the Electoral College is not an "official proceeding" under 18 U.S.C. §1512.  Its certification is, instead, the "official business" of Congress under 40 U.S.C. §5104(e)(2)(c).  This statute provides the proper basis for charges against Mr. Beckley. Indeed, the government originally charged Mr. Beckley with only misdemeanors, including Counts Two and Three of the Indictment, for violations of 18 U.S.C. §§1752(a)(1) and (2), as well as Counts Four and Five of the Indictment, for violations of 40 U.S.C. §§5104(e)(2)(D) and (G). *See* DN 1 and 10.  It is Mr. Beckley's position that these are the proper charges for his conduct as contained in the Indictment and the charge pursuant to 18 U.S.C. §1512 should be dismissed.

**C. The Legislative History of 18 U.S.C. §1512(c)(2) Demonstrates that its Prohibitions Are Limited in Scope.**

Section 1512 was created in the Victim and Witness Protection Act of 1982 "which prohibits various forms of witness tampering." *U.S. v. Poindexter,* 951 F.2d 369 (D.C. Cir. 1991). The predecessor statutes of Section 1512 were §241 of the Criminal Code and 18 U.S.C. §1505. *Id.* at 380 and 382.  In fact, the witness tampering prohibitions in §1512 included many activities that were formerly prohibited by §§1503 and 1505.  *Id.*  Section 241(a) of the Criminal Code, which is a direct predecessor of §1505, was enacted to prohibit "conduct affecting *proceedings* before…the Congress," defined as proceedings "in connection with *any inquiry or investigation* being had by either House, or any committee of either House, or any joint committee of the Congress of the United States." *Id.* at 380, quoting §241(a) (emphasis added).  Indeed, the Senate and House Reports and the floor debates concerning §241(a) focused almost exclusively upon the need to protect witnesses.  Both reports state that the proposed legislation "simply extends the protection not provided by law for witnesses in Court proceedings [under §241], to witnesses in proceedings before either House of Congress or committees of either House (or joint committees), and to witnesses in proceedings before administrative agencies of the Government."  H.R. Rep No.

1143, 76th Cong., 1st Sess. 1 (1939); S. Rep. No. 1135, 76th Cong., 1st Sess. 1 (1939). This history shows that the obstruction of Congress offense in §241, which was then transferred to §1505 and §1512, "extend[ed] the protection [then] provided by law for *witnesses* in court *proceedings* [under §241], to *witnesses in proceedings* before either House of Congress or committees of either House (or joint committees)." *Poindexter, supra* at 381 (internal citations omitted)(emphasis added).

Section 1515 provides the definition of "official proceeding" for Section 1512. In the Senate Report accompanying the Victim and Witness Protection Act of 1982, the Judicial Committee explained why the term "official proceeding" was being substituted for "legal proceeding" in §1515. S. Rep. 97-531 at *24. By substituting "official proceeding," the statute would now apply to civil, administrative, and criminal proceedings, as well as, time periods prior to formal charges being brought. *Id.* Critically, the 1982 Act's term "official proceeding" bore no trace of a congressional intent to expand the term to include any "official business before a body."

Section 1512(c) was passed as part of the Sarbanes-Oxley Act of 2002. This Act, "all agree, was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates, supra* at 535-536. Prior to 2002, there was a statutory gap in prohibited conduct under §1512. Before 1512(c) was enacted, Section 1512 only made it unlawful to cause another person to take certain steps, but did not make it unlawful for a person to take such action directly. The Senate Report for the Act identified this statutory loophole:

> Indeed, even in the current Andersen case, prosecutors have been forced to use the "witness tampering" statute, 18 U.S.C. §1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the shredding, this legal hurdle might present an

insurmountable bar to a successful prosecution.  S. Rep. No. 107-146, p. 7 (2002).

Senator Lott introduced §1512(c) on July 10, 2002.  148 Cong. Rec. S6542 (daily ed. July 10, 2002).  The Senator explained that this section would:

> enact stronger laws against document shredding.   Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered.   Timing is very important.
>
> Most people understand that shredding documents is a very bad thing to do.  Obviously, you cannot do it if there is something pending or if there is a subpoena.  But as was the case recently, they knew that an investigation was underway and a subpoena was likely, and the shredding of documents went forward.
>
> So this section would allow the Government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena.  I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.  *Id.* at S6545.

Then-Senator Joseph Biden echoed Senator Lott's understanding and purpose of the new statute as "making it a crime for document shredding."  *Id.* at S6546.  Likewise, Senator Orrin Hatch explained:

> This amendment would permit the government to prosecute an individual who acts alone in destroying evidence, even where the evidence is destroyed prior to the issuance of a grand jury subpoena. Prosecutors in the Andersen case succeeded in convicting the corporation.  However, in order to do so, they had to prove that a person in the corporation corruptly persuaded another to destroy or alter documents, and acted with the intent to obstruct an investigation.  Certainly, one who acts with the intent to obstruct an investigation should be criminally liable even if he or she acts alone in destroying or altering documents.  This amendment will ensure that individuals acting alone would be liable for such criminal acts. *Id.* at S6550.

The legislative history of this statute overwhelmingly demonstrates that it was passed in the wake of the Enron scandal to fill in a loophole.  Congress closed this loophole by passing subsection 1512(c).  Nothing in the legislative history suggests a broader purpose than that.

### D.  Persuasive Authority and Procedural Posture

Judge Carl J. Nichols issued an opinion on the same issue before this Court on March 7, 2022 in the case of *United States v. Garret Miller,* 1:21-cr-00119(CJN), United States District Court for the District of Columbia.  *See* DN 72, attached as **Ex. A**.  The Defendant in that matter sought, like Mr. Beckley, to dismiss the count in the Superseding Indictment charging him with Obstruction of an Official Proceeding and Aiding and Abetting pursuant to 18 U.S.C. §1512(c)(2). *Id.*  The language in Count Three of that Superseding Indictment is similar to the language in Count One of Mr. Beckley's Indictment.  It reads:

> On or about January 6, 20201, within the District of Columbia and elsewhere, **GARRET MILLER,** attempted to, and did, corruptly obstruct, influence, and impede an official proceedings, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§15-18.  DN 26.  (Emphasis in original).  1:21-cr-0019-CJN, DN 61.

Judge Nichols examined the allegations contained in the Superseding Indictment and after applying the principles of statutory construction outlined above, granted the Defendant's Motion to Dismiss.  DN 72, *supra.*  He concluded that "[n]othing in Count Three (or in the Indictment more generally) alleges, let alone implies, that Miller took some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence Congress' certification of the electoral vote.  *Id.* at p. 29.

The United States moved the Court to reconsider its decision, but this motion was denied on May 27, 2022.  1:21-cr-0019-CJN, DN 86.  An interlocutory appeal was taken by the United States on June 22, 2022.  That appeal is still currently pending.

Mr. Beckley respectfully requests the Court follow Judge Nichol's reasoning and opinion and grant the Motion to Dismiss in this matter.

### E.  The Conduct Alleged in Count One of the Indictment Falls Outside the Scope of 18 U.S.C. §1512(c)(2).

18 U.S.C. §1512(c)(2) is limited by subsection (c)(1), and thus requires that Mr. Beckley take some action with respect to a document, record or other object in order to corruptly obstruct, impede or influence an official proceeding.  Mr. Beckley, however, is not alleged to have taken such action.  Count One of the Indictment alleges only that he "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority, committing and act of civil disorder, threatening Congressional officials, and engaging in disorderly and disruptive behavior." DN 10.  There is no allegation in this Count that Mr. Beckley took action with respect to a document, record, or other object to corruptly obstruct, impede or influence Congress's certification of the electoral vote.

While the Court's analysis can end with this determination, the Indictment further fails to state an offense because the certification of an electoral vote is not an official proceeding.  While the Electoral College certification is arguably a "federally protected function" and/or "official business" of Congress, it clearly is not an evidence-gathering, formal, judicial or quasi-judicial event which is the purpose behind the enactment of 18 U.S.C. 1512(c).

WHEREFORE, based upon the foregoing authority and arguments, Mr. Beckley respectfully requests the Court grant his motion to dismiss Count One of the Indictment.

/s/ Aaron M. Dyke
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant.

## CERTIFICATE

I hereby certify that on October 11, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the attorneys of record.


/s/ Aaron M. Dyke