UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.     : | Criminal No. 1:21-cr-00285 (JEB) |
| : | |
| DAMON MICHAEL BECKLEY, : | |
| : | |
| Defendant.     : | |

STATEMENT OF FACTS FOR STIPULATED TRIAL

The parties, by their undersigned counsel, hereby submit this Statement of Facts for the Stipulated Trial.

I. **ELEMENTS**

**COUNT ONE**

The essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of Title 18, United States Code, Section 1512(c)(2), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following

beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

The term "official proceeding" includes a proceeding before Congress.

**COUNT TWO**

The essential elements of the offense of civil disorder, in violation of Title 18, United States Code, Section 231(a)(3), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with a law enforcement officer;

2. At the time of the defendant's actual or attempted act, the law enforcement officer was engaged in the lawful performance of his official duties incident to and during a civil disorder; and

3. The civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or

performance of any federally protected function.

The government further alleges that the defendant attempted to commit civil disorder. In order to prove the defendant is guilty of attempting to commit this offense, the government must prove beyond a reasonable doubt each of the following two elements:

1. That the defendant intended to commit this offense, and

2. That the defendant took a substantial step toward committing this offense which substantial step strongly corroborates or confirms the defendant intended to commit this offense.

**II.**   **STATEMENT OF OFFENSE**

If the case proceeded to trial, the defendant agrees the government would have elicited the following evidence:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately

1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President

Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Damon Beckley's Participation in the January 6, 2021, Capitol Riot*

8. In or about December 2020, the defendant, Damon Beckley, posted on a social media platform, in response to an article about the United States Congress, "It's not a slap in the face; it's a DARE for hardened patriots to Charlie Hebdo these traitors and end their audacious tyranny."

9. On December 27, 2020, Beckley posted on a social media platform, "Coups demand revolutions. Congress should be pulled into the DC streets Khaddafi style! Multiple stolen terms; they're ILLEGITIMATE!".

10. On January 5, 2021, Beckley traveled from his home in Kentucky to Washington D.C. The purpose of his trip to Washington, D.C. was to protest Congress' certification of the Electoral College.

11. On January 6, Beckley attended the "Stop the Steal" rally. At approximately 2:27 p.m., Beckley entered the Capitol through the East Rotunda Door, while police officers were attempting to secure the Capitol from those who were attempting to enter the Capitol. Beckley's

5

initial entry into the Capitol Building was recorded on a publicly available video that the parties agree is authentic. *See* Exhibit [1].

12. By 2:30 p.m., Beckley made his way to the area near a door to the House Chamber. He encountered a line of police officers who had formed a line to prevent individuals from approaching the House Chamber. He engaged in conversation with those officers, and told the crowd, among other things, "Everybody listen now. Please, listen everyone. We have permission to go into this room, but you're going to have to be respectful and there can't be any violence okay?" *See* Exhibit [2]. Beckley was not, in fact, permitted inside the House Chamber. At approximately 2:35 p.m., some members of the group pushed through the police line, allowing them to gain access to the vestibule outside the House Chamber door. Beckley made physical contact with one officer while making his way into the vestibule, reaching the outside of the House Chamber door. Beckley observed rioters break the glass panels of the House Chamber door, which was recorded on a publicly available video that the parties agree is authentic. *See* Exhibit [2].

13. At approximately 2:40 p.m., Beckley used his cell phone to film videos through the shattered windows of the House Chamber door. His videos showed officers inside the House Chamber pointing firearms back at him and the group gathered outside the Chamber doors. Officers and others inside the House Chamber told Beckley and the others gathered outside the Chamber doors not to advance. Beckley said through the broken window, among other things "I don't wanna get shot man, really. Please. We, we want, we just want our grievances redressed like the Constitution says, that's all." Beckley recorded a video on his cell phone during this period that the parties agree is authentic, on which Beckley's voice can be heard. *See* Exhibit [3].

14. Officers cleared the group from the House Chamber area. While being escorted out of the area, Beckley turned around and told an officer, "[D]on't push on me, man, I'm

6

moving." Beckley's interactions with police officers at this time are recorded on a publicly available video, which the parties agree is authentic. *See* Exhibit [4].

15.  Beckley exited the Capitol. At approximately 3:07 p.m., he recorded a video in which he stated, "just came out of the Capitol Building. Had a 9mm pointed in my face by the fools in this Congressional chamber."

16.  Beckley reentered the Capitol through the East Rotunda Door at approximately 3:15 p.m. and joined a crowd that was congregated in the area between the East Rotunda Door and the Rotunda. At approximately 3:24 p.m. to 3:25 p.m., police begin physically attempting to clear rioters, including Beckley, out of the area. Beckley recorded a video on his cell phone during this period, which the parties agree is authentic, on which his voice can be heard. *See* Exhibit [5].

17.  At approximately 3:29 p.m., Beckley remained in the Capitol, in the area between the East Rotunda Door and the Rotunda. Police continued attempting to clear that area. Beckley remained in the area until he was led out of the Capitol at approximately 3:30 p.m. Beckley's interactions with police officers at this time are recorded on a publicly available video, which the parties agree is authentic. *See* Exhibit [6].

18.  After he had been inside the Capitol, Beckley was interviewed outside the East Rotunda Doors. He stated, "We're not putting up with this tyrannical rule. If we gotta come back here and start a revolution and take all of these traitors out, which is what should be done, then we will." This statement was recorded on a publicly available video that the parties agree is authentic. *See* Exhibit [7].

Without waiving any arguments set forth in Mr. Beckley's Motion to Dismiss Count 1 (ECF 41), the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, this evidence would establish each and every element of Count One and Count Two in light

7

of the Court's ruling on the Motion (ECF 46) and without waiving defendant's objection to the Court's ruling.

Respectfully submitted,

*Counsel for the Government:*

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/
Jason M. Manning
Trial Attorney
NY Bar No. 4578068
United States Department of Justice
Jason.Manning@usdoj.gov

Julie Bessler
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
PA Bar No. 328887
Julie.Bessler@usdoj.gov

*Counsel for the Defendant:*

/s/
Aaron Dyke, Esq.
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

## DEFENDANT'S ACCEPTANCE

I have read the foregoing Statement of Facts for Stipulated Trial, and I have discussed this proffer fully with my attorney, Aaron Dyke. I fully understand this proffer, and I accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 02/16/23

Damon Beckley
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of Facts with my client, Damon Beckley, and fully discussed it with my client.

Date: 2/16/23

Aaron Dyke, Esq.
Attorney for Defendant Damon Beckley

9