**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CASE NO. 21-CR-285 (JEB)** |
| **v.** | **:** | |
| | **:** | |
| **DAMON MICHAEL BECKLEY,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S REQUEST FOR A NEW
TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits its opposition to Defendant Damon Beckley's motion

for new trial and related addendum. ECF 57, 69. For the reasons set forth below, the Government

respectfully submits that Defendant has not identified any newly available evidence, let alone

newly discovered evidence warranting a new trial; Defendant has not provided any corroboration

to his self-serving and incredible claim that he received ineffective assistance of counsel in

connection with his stipulated trial; and Defendant has not otherwise shown that ordering a new

trial here would be "in the interest of justice" pursuant to Federal Rule of Criminal Procedure 33.

The motion should therefore be denied.

**I.      BACKGROUND**

   *a.      Beckley's Charges and Pretrial Proceedings*

On January 16, 2021, Defendant Damon Beckley was arrested in the Western District of

Kentucky on a misdemeanor complaint.  ECF 1.  On April 7, 2021, a duly empaneled grand jury

in the District of Columbia indicted Defendant on five counts, including obstruction of an official

1

proceeding in violation of 18 U.S.C. § 1512(c)(2) and four misdemeanors.  ECF 10.  On October 12, 2022, the grand jury issued a superseding indictment, charging the same five counts in the indictment as well as Civil Disorder in violation of 18 U.S.C. 231(a)(3).  ECF 42. On October 14, 2022, Defendant requested that his trial date of December 12, 2022, be continued, and the Court granted this request, setting March 20, 2023, as the new trial date.  Minute Entry (10/14/2022).  On February 16, 2023—more than 20 months after Beckley's initial indictment, and just five weeks before trial would commence—the parties jointly moved to convert the trial to a stipulated bench trial.  ECF 52.

> b.    *The Stipulated Trial*

On February 23, 2023, the Court held the requested stipulated trial.  Minute Entry (02/23/2023).  The two counts on which the parties agreed to proceed at the stipulated were Count One (Civil Disorder) and Count Two (Obstruction of an Official Proceeding).

Defendant was represented by Mr. Aaron Dyke, Esq., of the Western Kentucky Federal Defender.  Mr. Dyke had represented Defendant since at least May 12, 2021.  ECF 21.  Mr. Dyke and Defendant both executed a Statement of Facts for Stipulated Trial before the stipulated trial.  ECF 56 (hereinafter, "Stip. SOF").  Mr. Dyke and Defendant also executed an Agreement and Waiver of Jury Trial Rights, in which Defendant acknowledged that he waived several rights by proceeding with a stipulated trial, including his right to a trial by jury.  ECF 55.

At the outset of the stipulated trial, the Court informed Defendant that it would "go over [his] rights very clearly to make sure [he] underst[ood] them and [was] agreeing to proceed" with a stipulated trial. Ex. A, Transcript of Stipulated Trial (hereinafter, "Tr.") at 2. The Court presented Defendant the Statement of Facts for Stipulated Trial which he had executed, and Defendant confirmed that he read and signed the document and agreed that its contents were accurate. *Id.* at

3–5.  The Statement of Facts for Stipulated Trial set forth the elements of both offenses and eleven detailed paragraphs described Defendant's relevant conduct, as related to Count One and Count Two, on January 6, 2021.  Stip. SOF at 1-3, 5-9.   Notably, in the Statement of Facts for Stipulated Trial, Defendant agreed that "if the Court finds the existence of" the stipulated facts "beyond a reasonable doubt," the stipulated "evidence would establish each and every element of Count One and Count Two" of the charges against Defendant.  Stip. SOF at 8.

The Court stated its intention "to make sure that [Defendant] [was] satisfied with [the] stipulated facts and that [he] agree[d] that they [were] accurate," and Defendant responded, "Yes." Tr. at 6.  Defendant also agreed that the stipulated trial would be "upon [the] stipulated facts" contained in the Statement "and no others," that he desired such a trial, and that he understood that the Court's determination of guilt or innocence would be based only upon the stipulated facts. *Id.* at 6. When shown the Agreement and Waiver of Jury Trial Rights, Defendant also confirmed that the document bore his signature, that he had read and understood the document, and that he wished to proceed with a stipulated trial. *Id.* at 7.

The Court then swore in Defendant. *Id.* at 7.  Defendant confirmed under oath that he had not "taken any drugs or medications or anything else in the last two days that might [have] ma[de] it difficult for [him] to follow [the] court proceedings." *Id.* at 8.  The Court found Defendant "fully competent and capable."  *Id.* at 9.

Under oath, Defendant also confirmed that he was "satisfied with [Mr. Dyke's] services in this case." *Id.* at 11.  The Court then went "over the rights [Defendant] . . . g[ave] up by agreeing to proceed with the stipulated trial." *Id.* at 11.  After agreeing that he understood these rights and that he had "the right to go to a jury trial or . . . could also have a bench trial in front of" the presiding judge, Defendant confirmed that he desired to proceed with a stipulated trial. *Id.* at 11–

3

13.  Having established that it was Defendant's knowing, voluntary choice to have a stipulated trial, the Court found that Defendant "underst[ood] his rights and what he [was] giving up in agreeing to proceed with the stipulated trial." *Id.* at 13–14.

The Court then proceeded with the stipulated trial, accepting "as the facts in the case those that are stipulated and set forth in" the Statement of Facts for Stipulated Trial. *Id.* at 14. The Government introduced into evidence eight videos, which were designated Exhibit 1 through Exhibit 8, which the parties agreed were authentic. *Id.* at 16.   The Government presented portions of the eight video exhibits, as follows:

- Exhibit 1 corroborated that, as set forth in paragraph 11 of the Statement of Facts, "[a]t approximately 2:27 p.m." on January 6, 2021, Defendant "entered the Capitol through the East Rotunda Door, while police officers were attempting to secure the Capitol from those who were attempting to enter" the building. *Id.* at 17; Stip. SOF at 5.

- Exhibit 2 corroborated that, as set forth in paragraph 12 of the Statement of Facts, immediately after entering the Capitol, Defendant "made his way to the area near a door to the House Chamber," "encountered a line of police officers who had formed a line to prevent individuals from approaching" the Chamber, and later "made physical contact with one officer while making his way into the vestibule" after the group around Defendant "pushed through the police line." Tr. at 19. During this time, Defendant also "observed rioters break the glass panels of the House Chamber door." *Id.*

- Exhibit 3 corroborated that, as set forth in paragraph 13 of the Statement of Facts, "[a]t approximately 2:40 p.m., defendant used his cell phone to film videos through the shattered windows of the House Chamber door," which videos "showed officers inside the House Chamber pointing firearms back at him" and others and telling them not to advance.  Stip. SOF at 6; Tr. at 19.

- Exhibit 4 corroborated that, as set forth in paragraph 14 of the Statement of Facts, "Officers cleared the group [including Defendant] from the House Chamber area. While being escorted out of the area, [Defendant] turned around and told an officer, '[D]on't push on me, man, I'm moving.'" Stip. SOF at 6–7; Tr. at 20.

- Exhibit 5 corroborated that, as set forth in paragraph 16 of the Statement of Facts, "[Defendant] reentered the Capitol through the East Rotunda Door at approximately 3:15 p.m. and joined a crowd that was congregated in the area between the East Rotunda Door and the Rotunda. At approximately 3:24 p.m. to 3:25 p.m., police beg[a]n physically attempting to clear rioters, including [Defendant], out of the area." Stip. SOF at 7; Tr. at 20.

4

- Exhibit 6 corroborated that, as set forth in paragraph 17 of the Statement of Facts, "[a]t approximately 3:29 p.m., [Defendant] remained in the Capitol, in the area between the East Rotunda Door and the Rotunda . . . until he was led out of the Capitol at approximately 3:30 p.m." Stip. SOF at 7; Tr. at 20–21.

- Exhibit 7 corroborated that, as set forth in in paragraph 18 of the Statement of Facts, Defendant "was interviewed outside the East Rotunda Doors" and "stated, 'We're not putting up with this tyrannical rule. If we gotta come back here and start a revolution and take all of these traitors out, which is what should be done, then we will.'" Stip. SOF at 7; Tr. at 21.

- Exhibit 8 corroborated that, as set forth in paragraph 15 of the Statement of Facts, "Beckley exited the Capitol. At approximately 3:07 p.m., he recorded a video in which he stated, 'just came out of the Capitol Building. Had a 9mm pointed in my face by the fools in this Congressional chamber.'" Stip. SOF at 7; Tr. at 21.

Throughout its presentation of the video evidence, the Government often paused the videos to indicate for the Court where and when Defendant appeared in the videos. Tr. at 17–21.

After reviewing the Stipulated Statement of Facts and the video evidence introduced in Court, the Court it found "all of the facts that are stipulated to be true" and that "they have been proven beyond a reasonable doubt given the stipulation that has been entered." Tr. at 22. The Court found Defendant guilty of both counts: a violation of 18 U.S.C. § 231(a)(3) and a violation of 18 U.S.C. § 1512(c)(2). *Id.*

   c.   *Defendant's New Trial Motion*

On March 8, 2023, Defendant timely filed a *pro se* motion for a new trial. ECF 57 (hereinafter, "Def.'s Mot."). The Court appointed Defendant new counsel to assist with the motion but, after months of delay, Defendant decided to once again proceed *pro se*. On June 7, 2023, Defendant submitted an addendum to his previous new trial motion. ECF 69 (hereinafter, "Addendum"). Defendant's new trial motion essentially boils down to three arguments: he received ineffective assistance of counsel; he believes there is exculpatory evidence that warrants a new trial; and he did not make a knowing, intelligent decision to waive his right to a contested

trial because at the stipulated trial he was suffering from various health issues and the effects of over-the-counter medications.

Defendant's new trial motion and addendum, considered collectively, include the following allegations related to the effectiveness of his representation by Mr. Dyke:

- Mr. Dyke failed to advise Defendant that he could seek a bench trial.  Def.'s Mot. at 5.

- Mr. Dyke failed to explain to Defendant the workings of a stipulated trial and, in particular, failed to explain to Defendant that defense counsel would not present a defense to the stipulated facts at the stipulated trial. *Id.* at 5.

- Mr. Dyke coerced Defendant into accepting the stipulated trial. *Id.* at 6.

- Mr. Dyke withheld from Defendant videos that were produced by the Government in discovery in November 2022.  Addendum at 1–2.

- Mr. Dyke failed to search for purportedly exculpatory video evidence that Defendant had asked him to find related to: Defendant's purported conduct assisting trapped police officers; the fact that police purportedly invited Defendant to come back inside the Capitol Building after he had left; Defendant's  purpose inside the Capitol was to find a particular person; and Defendant's Google Maps timeline that purportedly shows an exculpatory interaction with a police officer near a grocery store.  *Id.* at 2–3, 5; Def.'s Mot. at 6.

- Mr. Dyke agreed to toll the time under the Speedy Trial Act without Defendant's consent.  Addendum at 4.

- Mr. Dyke generally did not devote sufficient attention and energy to Defendant and his case, and Mr. Dyke tried to "actively run[] out the clock" rather than assist Defendant.  Def.'s Mot. at 6; *Id.* at 5–6.

- Mr. Dyke's actions in his representation of Defendant were "politically motivated in nature."  Addendum at 4.

In addition to his claims related to purported ineffective assistance of counsel, Defendant also asserts that there are several pieces of exculpatory evidence not addressed at the stipulated trial that warrant a new trial, including:

- Video evidence purportedly showing "[t]hat [he] was *the* [sic] person helping approximately 15 trapped and afraid police officers . . . on January 6th." Addendum at 1.

- Video evidence purportedly showing that he "originally entered the building searching for one of the rallies' [sic] organizers[.]" *Id.* at 4.

- Video evidence purportedly showing that his party "had no knowledge of any violence happening" in the section of the Capitol in which he was present as well as his "calm demeanor upon . . . arrival." *Id.* at 5.

- "Google Maps timeline" evidence purportedly showing that "when parking near the Capitol [Building]" Defendant spoke with a police officer about "where [he] could park to avoid getting a parking ticket." *Id.*

Defendant has not provided any of the above evidence in support of his motion.

Defendant also claims that several health-related factors—sleep deprivation, an episode of temporomandibular joint dysfunction ("TMJ"), and the effects of combining Benadryl and ibuprofen—caused him to be unable to properly function during the stipulated trial. Def.'s Mot. at 4–5.

       d.    *The Affidavit of Aaron Dyke, Esq.*

Mr. Dyke submitted an affidavit addressing Defendant's allegations. Ex. B, Affidavit of Aaron Dyke, Esq. ("Dyke Aff."). Mr. Dyke has also submitted an email he sent to Defendant weeks after the stipulated trial, in which he counseled against filing a new trial motion because he believed there was no legal basis to do so, and it could be contrary to Defendant's interests. Ex. C, Email from Aaron Dyke, Esq. to Damon Beckley, dated March 7, 2023 (hereinafter "March 7 Email").

The following assertions in Mr. Dyke's affidavit and accompanying email contradict Defendant's claims about his own mental state at the stipulated trial and Mr. Dyke's ineffective assistance throughout his representation:

- Mr. Dyke "logged 199 total hours of work on Mr. Beckley's case, of which 33.5 hours were dedicated to meeting with, or speaking to [Defendant]." Dyke Aff. ¶ 5.

- Mr. Dyke discussed with Defendant his "advice with regard to whether [Defendant] should proceed to trial or resolve his case in another manner." *Id.* ¶ 7.

7

- Mr. Dyke had "multiple conversations with the United States with regard to" plea offers "and the idea of a stipulated trial" in which Defendant "was actively involved." *Id.* ¶¶ 8, 9.

- Mr. Dyke informed Defendant that "he could resolve his case by a jury trial, a bench trial, a stipulated trial, a plea agreement, or an open plea," and Mr. Dyke discussed each of these options with Defendant "at length." *Id.* ¶ 10.

- Mr. Dyke met with Defendant in his office "for approximately six (6) hours to go over the United States' proposed stipulations for a stipulated trial and to discuss whether [Defendant] wanted to proceed via a stipulated trial." *Id.* ¶ 11.

- Mr. Dyke and Defendant "went over every single line of" the United States' proposed stipulations together and "made substantial proposed edits to that document," working "together to write the language that was sent to the United States." *Id.* ¶ 12.

- Defendant was informed prior to his stipulated trial that the Government did not agree to include certain mitigating clips as exhibits in the stipulated trial, and Defendant "ultimately agreed to the video clips that were admitted." *Id.* ¶ 18.

- Mr. Dyke had with Defendant "numerous conversations about the video evidence provided in discovery" and "explained to him throughout his case that any and all mitigating evidence would be presented at a future sentencing hearing." *Id.* ¶ 20.

- Mr. Dyke advised Defendant that it was in his best interest "to proceed with the stipulated trial," basing his recommendation on his belief that "the proof the United States would present at trial was sufficient to obtain a conviction for the charged offenses." *Id.* ¶ 21.

- This belief was, in turn, based on the evidence "contained within the discovery provided by the United States" as well as an examination of the trial results of criminal defendants in similar cases. *Id.* ¶ 22.

- Mr. Dyke "also believed that the stipulated trial was in [Defendant's] best interest because it allowed [him] to receive the 3-level reduction for acceptance of responsibility, that he would likely otherwise lose if he proceeded to trial." *Id.* ¶ 23.

- Mr. Dyke discussed with Defendant cases similar to his own and the sentences handed down in those cases; after these conversations, Defendant "agreed that he wanted to proceed with a stipulated trial." *Id.* ¶¶ 24, 25.

- Before the stipulated trial, Mr. Dyke "explained to [Defendant] how the stipulated trial would proceed." *Id.* ¶¶ 26, 27.

- In his conversations with Defendant and his family members on the day of the stipulated trial, Mr. Dyke never got "the impression [that] [Defendant] was unable to go forward with the stipulated trial, or that he did not want to proceed with the stipulated trial." *Id.* ¶¶ 27, 28, 29.

- Neither Defendant nor any "of the other individuals who were with" Defendant mentioned to Mr. Dyke "that [Defendant] had taken any medication prior to the stipulated trial." *Id.* ¶ 30.

- Defendant's demeanor on the day of the stipulated trial appeared to Mr. Dyke to be similar to how it was in "all of [his] prior interactions with him." *Id.*

- On the day of the stipulated trial, Mr. Dyke spoke with Defendant "prior to entering the courtroom, and at that time [Defendant] asked rational questions about the events that were scheduled to take place during [his] stipulated trial." March 7 Email at 1.

- "At no point did [Mr. Dyke] coerce [Defendant] into resolving his case via a stipulated trial." Dyke Aff. ¶ 35.

- Defendant "was advised of his right to a speedy trial, and consented to the continuances throughout the pendency of his case, and at no point in time did he inform [Mr. Dyke] that he wished to object to the continuances in his case." *Id.* ¶ 36.

- In representing Defendant, Mr. Dyke "diligently reviewed the discovery provided by the United States in an attempt to locate all inculpatory, exculpatory, and mitigating evidence." *Id.* ¶ 37.

## II.    LEGAL STANDARD

### a.    *Rule 33 New Trial Motions Should Only Be Granted in Limited Circumstances*

Under Rule 33 of the Federal Rules of Criminal Procedure, "[u]pon [a] defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). This Court has held that "'[t]rial courts enjoy broad discretion in ruling on a motion for a new trial.'" *United States v. Moore*, No. CR 18-198 (JEB), 2023 WL 1070562, at *2 (D.D.C. Jan. 27, 2023) (alteration in original) (quoting *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014)). The breadth of trial courts' discretion regarding such motions arises from the fact that "'[t]he rules do not define 'interests of justice' and courts have had little success in trying to generalize its meaning.'" *Moore*, 2023 WL 1070562, at *2 (quoting *Wheeler*, 753 F.3d at 208). However, "[a]t bottom, the D.C. Circuit counsels that granting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have

occurred," *Moore*, 2023 WL 1070562, at *2 (quoting *Wheeler*, 753 F.3d at 208), such as, when "an innocent person has been convicted," *United States v. Borda*, 786 F. Supp. 2d 25, 32 (D.D.C. 2011) (internal quotation marks and citations omitted).

Further, Rule 33 motions "are viewed with great caution and only granted in extraordinary circumstances where the evidence preponderates heavily against the verdict and when any error affects a defendant's substantial rights." *United States v. Benton*, No. 1:21-CR-00569 (TNM), 2023 WL 1070563, at *5 (D.D.C. Jan. 27, 2023) (internal quotation marks and citation omitted). Indeed, "[u]nless an error . . . affects a defendant's substantial rights, it shall be disregarded." *Borda*, 786 F. Supp. 2d at 32 (citing *United States v. Lawson*, 494 F.3d 1046, 1053 (D.C. Cir. 2007)); *see also* Fed. R. Crim P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Even when such rights are adversely affected, "the error must have a 'substantial and injurious effect or influence in determining the . . . verdict' in order to warrant a new trial." *Borda*, 786 F. Supp. 2d at 32 (alteration in original) (citing *United States v. Dominguez Benitez*, 542 U.S. 74 (2004)). Thus, under Rule 33(a), the "interest of justice" requires a court to grant a new trial only when an error has affected a defendant's substantial rights and substantially impacted the verdict.   The burden of demonstrating that a new trial would be in the interest of justice rests with the defendant.  *United States v. Machado-Erazo*, 986 F. Supp. 39, 44 (D.D.C. 2013) (citing *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982)).

> ii.     *Ineffective Assistance of Counsel Only Warrants a New Trial Where* Strickland*'s Two-Part Test Is Satisfied*

Effective assistance of counsel is a substantial right cognizable under Rule 33(a) and Rule 52(b) of the Federal Rules of Criminal Procedure. In *Strickland v. Washington*, the Supreme Court held that a criminal defendant's Sixth Amendment right "to have the Assistance of Counsel for his

defence" includes the right to *effective* assistance of counsel. 466 U.S. 668, 686  (1984); U.S.

CONST. amend. VI. A claim of ineffective assistance of counsel will succeed if the criminal

defendant demonstrates two elements: first, that "the counsel's performance was deficient," and

second, that "the deficient performance prejudiced the defendant." *United States v. Doost*, 3 F.4th

432, 436–37 (D.C. Cir. 2021) (citing *Strickland*, 466 U.S. at 687).  The defendant bears the burden

of demonstrating both elements.  *Id.*  Failure to prove either prong will defeat an ineffective

assistance claim.  *Strickland*, 466 U.S. at 700.  Accordingly, it is not necessary for a court to

address both prongs of the *Strickland* test if the defendant has failed to make the required showing

for one.  *Id*. at 697.

Regarding deficient performance, the court considers "whether counsel's performance 'fell

below an objective standard of reasonableness,' while 'indulg[ing] a strong presumption that

counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Doost*, 3

F.4th at 437 (quoting *Strickland*, 466 U.S. at 688, 689). More specifically, the defendant first must

show that his attorney's errors were so "serious that counsel was not functioning as 'counsel'

guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  To meet this

standard, the defendant must show that, in light of all the circumstances as they appeared at the

time of the conduct, "counsel's representations fell below an objective standard of

reasonableness," or "prevailing professional norms."  *Id.* at 688, 690; *Nix v. Whiteside*, 475 U.S.

157, 165 (1986).  "'Surmounting [this] high bar is never an easy task.'"  *United States v. Brinson-

Scott*, 714 F.3d 616, 623 (D.C. Cir. 2014) (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010)).

"As a general matter, the bar of objective reasonableness is set rather low." *United States v. Hurt*,

527 F.3d 1347, 1356 (D.C. Cir. 2008); *see also Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (*per

curiam*) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged

with the benefit of hindsight.").  The Sixth Amendment does not require perfection.  *Hurt*, 527 F.3d at 1357.

Regarding prejudice, the court assesses "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "To meet this standard, the defendant need demonstrate only a probability sufficient to undermine confidence in the verdict." *Id.* (internal quotation marks and citations omitted).  "It is not enough, however, for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Rather, establishing a "reasonable probability" requires that "the likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011); *see also United States v. Brinson-Scott*, 714 F.3d at 624.

The D.C. Circuit has elaborated upon the *Strickland* factors specifically in the context of alleged evidentiary errors by a criminal defendant's counsel. In *Doost*, cited above, the Court found that, "[t]o establish ineffective assistance with regard to failure to admit exculpatory evidence or failure to object to inculpatory evidence, a defendant must demonstrate 'a reasonable probability that the verdict would have been different' had counsel made the specified evidentiary decisions." *Doost*, 3 F.4th at 444 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). In evaluating a defendant's arguments on this front, courts "must consider the totality of the evidence before the judge or jury." *Doost*, 3 F.4th at 444 (quoting *Strickland*, 466 U.S. at 695). Therefore, if "the evidence counsel failed to introduce was of such limited probative value that it would not have weakened the government's case," then the defendant cannot establish the prejudice prong of an ineffective-assistance claim, and such a claim therefore must fail. *Doost*, 3 F.4th at 445.

In sum, an ineffective-assistance-of-counsel claim can undergird a Rule 33 new trial motion, but to succeed, a defendant must meet both prongs of the *Strickland* test: deficient performance and resulting prejudice. *See United States v. Doost*, No. 1:17-CR-00109-APM, 2019 WL 1560114 (D.D.C. Apr. 10, 2019) (applying *Strickland* to defendant's Rule 33 motion predicated on ineffective assistance).

   b.   *"Newly Discovered" Evidence Must Have Been in Existence at the Time of Trial and Discovered after Trial*

Rule 33(b) provides that a "motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty," but a "motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b). For evidence to be "newly discovered," two criteria must be met: first, the evidence "must have been in existence at the time of the trial," and second, it must have been "'discovered since the trial.'" *United States v. Poynter*, 908 F. Supp. 2d 30, 35 (D.D.C. 2012), aff'd, 509 F. App'x 2 (D.C. Cir. 2013), and aff'd, No. 13-3001, 2013 WL 5975597 (D.C. Cir. Oct. 24, 2013).

Under this standard, evidence such as the "'post-trial testimony of a co-conspirator who refused to testify at trial'" and "information revealed to the defendant several years earlier" is not newly discovered. *Poynter*, 908 F. Supp. 2d at 35. "Trial courts have broad discretion when deciding whether to grant a new trial based on newly-discovered evidence," but the discovery of new evidence warrants a new trial only if the movant can prove the following five elements:

> (1) the evidence was discovered after the trial; (2) the [movant] acted diligently in its attempts to procure the newly-discovered evidence; (3) the evidence relied on is not "merely cumulative or impeaching," (4) the evidence is "material to the issues involved" in the case and (5) the evidence is "of such nature that in a new trial it would probably produce an acquittal."

13

*United States v. Slatten*, 865 F.3d 767, 790 (D.C. Cir. 2017) (quoting *Thompson v. United States*, 188 F.2d 652, 653 (D.C. Cir. 1951)).

   *United States v. Poynter* illustrates how this test is applied. There, the defendant alleged that the Government withheld exculpatory evidence at trial, and he claimed that his statements in the allegedly withheld recorded conversation "would make [his] later statements seem less criminal in nature." 908 F. Supp. 2d at 36. The court found that such evidence, which consisted "of defendant's *own* statements in a recording made prior to trial," was "not in any way 'newly-discovered.'" *Id.* at 36. "Moreover," that court held, "to the extent that the excluded excerpt was discussed during a bench conference at trial, defendant's counsel was also expressly made aware of the excluded portion if she had not been aware of it before." *Id.* Consequently, the *Poynter* court found that the allegedly withheld exculpatory evidence could not be the basis for a new trial. *Id.*

   c.   *Uncorroborated Claims Clearly Failing to Show Entitlement to Relief Do Not Require an Evidentiary Hearing*

   Appellate precedents in the analogous context of petitions to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 establish that a Defendant's incredible and uncorroborated claims do not, on their own, warrant an evidentiary hearing. The D.C. Circuit has held that "Section 2255 does not require the district court to hold a hearing on [a § 2255] motion if 'the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Green*, 680 F.2d 183, 184 (D.C. Cir. 1982) (quoting 28 U.S.C. § 2255(b)). Similarly, the First Circuit has held that "[a] hearing is not necessary in cases where a § 2255 motion '(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *United States v. Carbone*, 880 F.2d 1500, 1502 (1st Cir. 1989) (citing *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974)); *see also Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (holding that "when presented with factual allegations, a district court

may only forego a hearing where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

## III.   ARGUMENT

Defendant's claims are wholly uncorroborated and not credible on their face.  Moreover, none of Defendant's bald allegations, even if true, would cast doubt on the integrity of his convictions on Count One and Count Two.  For the reasons set forth below, all Defendant's contentions fail to warrant a new trial under Rule 33.

> a.   *Defendant Knowingly and Intelligently Chose to Proceed with the Stipulated Trial*

Defendant contends that, because of a confluence of health-related factors, he "could not concentrate during [the Court's] questioning of [him] that day" and was not "making clear decisions." Def.'s Mot. at 4–5. These assertions amount to a claim that Defendant did not make a knowing, intelligent decision to waive his rights and proceed with the stipulated trial.  This self-serving claim is entirely belied by the record.

As detailed above, the Court conducted a thorough colloquy with Defendant to ensure that he made a knowing and intelligent decision to proceed with the stipulated trial. Tr. at 2–14. Beckley's statements made under oath during the colloquy preceding his stipulated trial are presumed to be true.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity"); *United States v. Farley*, 72 F.3d 158, 164-65 (D.C. Cir. 1995)(quoting *Blackledge*); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (strong presumption that statements made during guilty plea colloquy are true).  Moreover, at the conclusion of this extensive questioning, the Court—based upon its own first-hand observations of Defendant—found that Defendant "underst[ood] his rights and what he [was] giving up in

agreeing to proceed with the stipulated trial." *Id.* at 14. Defendant's claims about his mental state at the stipulated trial thus directly contradict the Court's own findings.

Furthermore, Mr. Dyke, whose extensive experience with Defendant included having met with or spoken to him for more than 30 hours, attests that "a[t] no point during any" of the conversations he had with Defendant on the day of the stipulated trial "did [he] get the impression [Defendant] was unable to go forward with the stipulated trial, or that he did not want to proceed with the stipulated trial." Dyke Aff. ¶ 29. Defendant's demeanor, Mr. Dyke asserts, "was similar to" how it was in "all of [his] prior interactions with [Defendant]," *id.* ¶ 30, and Defendant was asking counsel "rational questions about the events that were scheduled to take place during [his] stipulated trial." March 7 Email at 1.

None of Defendant's family members present at the stipulated trial mentioned to Mr. Dyke that Defendant had taken any medication prior to the stipulated trial or was in any other way impaired. Dyke Aff. ¶ 30. Moreover, none have submitted affidavits in support of Defendant's motion either. Defendant's contentions that he did not understand the nature of the stipulated trial are thus uncorroborated, incredible, and self-serving on their face, in contrast to Defendant's sworn statements to this Court which are presumed to be true. They should therefore be dismissed.

> b.   *Defendant's Ineffective-Assistance-of-Counsel Claim Fails on Both the Deficient Performance and Prejudice Prongs*

Defendant's ineffective-assistance claim also falls far short of showing that the "interest of justice" warrants a new trial because Defendant has not made out either the deficient performance or the prejudice prong of the *Strickland* test.

Defendant bears a heavy burden to show that Mr. Dyke performed deficiently because courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 674.  Defendant cannot meet this

burden.  Defendant's allegations of deficiency include claims that Mr. Dyke agreed to toll the Speedy Trial clock without his consent; failed to advise him that he could seek a bench trial; did not explain to him the workings of a stipulated trial; and generally did not devote adequate time and energy to him and his case. Def.'s Mot. at 5, 6; Addendum at 5–6.  None of these claims bear scrutiny.  Indeed, while under oath and answering this Court's inquiry just prior to his stipulated trial, Defendant acknowledged that he was satisfied with Mr. Dyke's performance.  Tr. at 10-11.  This sworn statement made in open court is also presumed to be true.

According to the sworn affidavit of Mr. Dyke, over the course of his representation of Defendant, he "logged 199 total hours of work on [Defendant's] case, of which 33.5 hours were dedicated to meeting with, or speaking to" Defendant.  Dyke Aff.  ¶ 5.  Mr. Dyke advised Defendant "of his right to a speedy trial" and Defendant consented to continuances throughout the pendency of his case. *Id.* ¶ 36.[1]  Mr. Dyke had conversations with the Government about "the idea of a stipulated trial" in which Defendant was "actively involved." *Id.* ¶¶ 8, 9. Mr. Dyke further attests that Defendant "was made aware that he could resolve his case by a jury trial, a bench trial, a stipulated trial, a plea agreement, or an open plea" and that "[e]ach of those options were discussed at length." *Id.* ¶10.  (The Court also informed Defendant of his right to a bench trial during the colloquy preceding the stipulated trial, as stated *supra*.)  Not only did Defendant meet with Mr. Dyke "for approximately six (6) hours to go over the United States' proposed stipulations for a stipulated trial and to discuss whether [Defendant] wanted to proceed via a stipulated trial,"

---

[1] Defendant fails to identify any basis for an objection under the Speedy Trial Act, 18 U.S.C. § 3161, et seq., let alone an objection which this Court would have granted.  Defense counsel does not perform deficiently for failing to raise a meritless objection.  *See United States v. Islam*, 932 F.3d 957, 964 (D.C. Cir. 2019) ("The failure to raise a meritless objection is not deficient performance").  Thus, Defendant's failure to show an objection with merit defeats his claim.

Defendant also "went over every single line of that document" and "made substantial proposed edits to" it with Mr. Dyke. *Id.* ¶¶ 11, 12.

Defendant also asserts that Mr. Dyke withheld videos that were produced by the Government in discovery and failed to search for other exculpatory evidence. Addendum at 1–3, 5; Def.'s Mot. at 6. Mr. Dyke's affidavit refutes these claims.  Defendant and Mr. Dyke had "numerous conversations about the video evidence provided in discovery." Dkye Aff. ¶ 19. Further, Mr. Dyke adds that "[t]hroughout [his] representation of [Defendant] [he] diligently reviewed the discovery provided by the United States in an attempt to locate all inculpatory, exculpatory, and mitigating evidence." *Id.* ¶ 37.  With respect to the specific videos introduced at the stipulated trial, Defendant was "made aware of that fact prior to his stipulated trial and ultimately agreed to the video clips that were admitted." *Id.*

Mr. Dyke's affidavit also addresses the alleged exculpatory evidence purportedly showing Defendant's "rationale for entering the Capitol, where [he and his family] had been prior to arriving at the Capitol, and his assistance to law enforcement officers while he was in the Capitol." *Id.* ¶20. Mr. Dyke and Defendant "spent hours discussing this evidence and whether it was best to present that evidence at a trial in his defense, or whether it was better to present that evidence as mitigation in a sentencing hearing."  *Id.*  Mr. Dyke states that he "advised [Defendant] that [he] thought it was in his best interest to proceed with the stipulated trial," a recommendation which Mr. Dyke "based . . . on the fact that [he] believed that the proof the United States would present at trial was sufficient to obtain a conviction for the charged offenses." *Id.* ¶ 21. This advice, Mr. Dyke explains, was based not only upon "the evidence contained within the discovery provided by the United States . . . but also on other . . . trial results of other defendants who had been in close physical proximity to [Defendant] in the Capitol who had proceed to trial and been found guilty." *Id.* ¶ 22.

18

The consideration that a stipulated trial "allowed [Defendant] to receive the 3-level reduction for acceptance of responsibility" also informed Mr. Dyke's conclusion. *Id.* ¶ 23. Defendant now appears to dispute counsel's strategy but fails to explain why it was unreasonable. *See Massaro v. United States*, 538 U.S. 500, 505 (2003) ("defendant claiming ineffective assistance of counsel must show that counsel's actions were not supported by a reasonable strategy"); *United States v, Weaks*, 840 F.Supp.2d 12, 21 (D.D.C. 2012) (the fact that in hindsight a defendant disagrees with counsel's strategy does not render counsel's performance deficient).

After discussing with Mr. Dyke other sentences that this Court has handed down to January 6 defendants and mitigating evidence that may "impact his ultimate sentence," Defendant "agreed that he wanted to proceed with a stipulated trial." *Id.* ¶¶ 24, 25.

In its totality, Mr. Dyke's affidavit shows that he thoroughly reviewed the evidence, extensively advised his client, and properly ensured that his client was aware of viable legal options and strategies, including the strategy related to pursuing a stipulated trial.  This performance does not fall "below an objective standard of reasonableness" for performance by counsel and does not dispel the strong presumption of "reasonable professional assistance" that courts must adopt when evaluating ineffective-assistance claims. *Strickland*, 466 U.S. at 688, 689.

Defendant has also failed to make out the second element of the *Strickland* test. As set forth above, the relevant inquiry for this prong is "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Doost*, 3 F.4th at 437 (quoting *Strickland*, 466 U.S. at 694). Given that courts "must consider the totality of the evidence before the judge or jury" in evaluating ineffective-assistance claims, *Doost*, 3 F.4th

at 444 (quoting *Strickland*, 466 U.S. at 695), Defendant cannot make out a claim of prejudice here because of the sheer weight of the undisputed evidence supporting his conviction.

The Government offered extensive video evidence at the stipulated trial, in addition to the parties' agreed-upon stipulated facts, proving Defendant's interfering with police officers during a civil order and obstructing the official proceeding of the joint session of Congress on January 6, 2021, in violation of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 1512(c)(2), respectively.[2]  Defendant has not provided any basis whatsoever to believe that any difference in Mr. Dyke's representation would have changed the outcome of the proceeding.   Defendant claims that videos exist that supposedly show him assisting police officers during the Capitol Riot or engaging in an amicable conversation with an officer about parking.  Even if that were true (neither the Government nor the Court have been provided these purported videos), the proof that at times Defendant engaged in non-felonious conduct would not exculpate him for the two charged felonies.  Rather, those two charged felonies would nevertheless have been proven overwhelmingly by the video evidence of the Defendant physically impeding officers inside the Capitol Building, obstructing the Congressional proceeding by penetrating all the way to the barricaded House Chamber door, and by Defendant's own recorded assertions  that he would "start a revolution and take all these traitors out."  Thus, Defendant has not shown that Mr. Dyke's performance as counsel has prejudiced him, and his motion fails the second prong of the *Strickland* test.

> b.    *Defendant Has Not Produced Any Newly Discovered Evidence at All, Let Alone Evidence Warranting a New Trial*

In his motion for a new trial and its accompanying addendum, Defendant asserts the existence of evidence purportedly demonstrating, that he assisted trapped police officers and

---

[2]    Mr. Dyke asserts that he "believed that the proof the United States would present at trial was sufficient to obtain a conviction for the charged offenses." Dyke Aff. at ¶ 21.

"originally entered the building searching for one of the rallies' [sic] organizers." Addendum at 2–5; Def.'s Mot. at 6.  But Defendant has merely alleged the existence of these videos that he purportedly has seen but which he has not submitted to the Court.  The Court, however, need not take Defendant's self-serving word at what these videos actually show.  Defendant's failure to come forward with any actual "newly discovered evidence" thus dooms this aspect of his motion. *See United States v. Steele*, 72 F. App'x 478, 480 (7th Cir. 2003) (upholding district court's denial of defendant's Rule 33 motion for new trial predicated on purported new alibi witnesses where the defendant "did not provide names, affidavits, or anything else that would have allowed the district court to evaluate the quality of his supposed alibi.").

Even assuming that the alleged evidence does exist, however, it would not be considered "newly discovered" within the context of Rule 33(b)(1). As noted above, this Court found in *Poynter* that for evidence to be considered newly discovered, it must have existed at the time of trial and been discovered since trial. *Poynter*, 908 F. Supp. 2d at 35.  Yet, Defendant has conceded that Mr. Dyke had the allegedly exculpatory evidence before trial.  Addendum at 1 ("This evidence was withheld by the DOJ and the prosecution in my case until November of 2022, when some of it was sent by them to Mr. Dyke."); *id.* at 3 ("Ms. Staft found video supplied to her by Dyke's office which they had in their possession as far back as November of 2022 which shows me at the top of the East Rotunda Porch steps using a megaphone to get the crowd on the steps to make a hole so that the police could get out of the building."). Because the alleged evidence was purportedly known to defense counsel before trial—and presumably Defendant's own conduct was

known to Defendant all along—it could not be considered "newly discovered" as contemplated by Rule 33(b)(1), as the court held in *Poynter*.

Moreover, even if Defendant's alleged evidence were considered newly discovered, it would nevertheless still not warrant a new trial. As set forth *supra*, five factors must be satisfied for the discovery of new evidence to justify a new trial, the fifth of which is that "the evidence is 'of such nature that in a new trial it would probably produce an acquittal.'" *Slatten*, 865 F.3d at 790 (quoting *Thompson*, 188 F.2d at 653). As also described *supra*, Defendant fails to explain how any of the alleged evidence contradicts the extensive evidence of his guilt provided by the government at the stipulated trial.  To the extent this purported evidence bears on Defendant's intent on January 6, it would do little to contradict the intent-based evidence already produced. *See, e.g.*, Stip. SOF at 5 ("On December 27, 2020, [Defendant] posted on a social media platform, 'Coups demand revolutions. Congress should be pulled into the DC streets Khaddafi style! Multiple stolen terms; they're ILLEGITIMATE!'); *id.* at 7 ("After he had been inside the Capitol, Beckley was interviewed outside the East Rotunda Doors. He stated, 'We're not putting up with this tyrannical rule. If we gotta come back here and start a revolution and take all of these traitors out, which is what should be done, then we will.'").

Thus, even if the alleged evidence were submitted to the Court and deemed newly discovered, and even if it did indeed show what Defendant claims, it would *still* fail to justify a new trial in the face of the evidence supporting Defendant's conviction on the two charges at issue.

### d.    Defendant's Self-Serving Allegations Are Clearly Contradicted by the Record and Should Be Dismissed Without an Evidentiary Hearing

The evidence introduced at the stipulated trial showed that Defendant repeatedly interfered with police officers during the Capitol Riot.  The evidence further showed that he played a significant role in obstructing the official proceeding—and threatening the peaceful transfer of

power—by barreling past a police line and making his way all the way to the barricaded House Chamber door.  Defendant's conduct on January 6 was so egregious that, as shown at the stipulated trial, he was one of the few rioters to have a police weapon pointed directly at him.  Further, at the stipulated trial, Defendant's own statements—through postings on social media about pulling Congresspersons into the street "Khaddafi style" and interviews he gave on January 6 threatening "revolution"—overwhelmingly showed  his intent to commit the charged offenses.  Stip. SOF at 5, 7.

In the face of this clear evidence of his guilt, Defendant has made a variety of uncorroborated claims that are plainly contradicted by the record.  There is no support whatsoever for his incredible assertion that, despite the Court's thorough colloquy, he was not competent to make knowing, intelligent decisions at the stipulated trial.  Moreover, the bases for this claim—an allegedly unfortunate combination of over-the-counter medicines and lack of sleep—are so generic that, if they were to be accepted, they would significantly undermine the public interest in the finality of criminal judgments.  Such contentions also fail to overcome the presumption of truth that attaches to Defendant's sworn statements to this Court that he had not taken any medication affecting his ability to proceed with his stipulated trial.

Defendant's attacks on the professionalism of Mr. Dyke are contradicted by Mr. Dyke's affidavit and they too are not credible on their face; to take one example, Defendant insists Mr. Dyke failed to avail himself of purportedly exculpatory evidence but, tellingly, Defendant has never provided that evidence to the Court.  For the same reason, Defendant's bald claim that he possesses newly discovered evidence, which he has never shown the Court, fails as well.

Under these circumstances, no evidentiary hearing is warranted.  *See, e.g., Rainford v. United States,* 648 F. Supp. 2d 476, 479–81 (E.D.N.Y. 2009) (rejecting a petitioner's ineffective

assistance counsel claim without a hearing where he "submitted practically nothing to support his claim" beyond a "conclusory affidavit," and where his attorney provided "a detailed affidavit addressing" petitioner's allegations).

## III.    CONCLUSION

For the foregoing reasons, the Government respectfully submits that no hearing is warranted, the motion should be denied in its entirety, and the case should proceed expeditiously to sentencing.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/_____
Jason M. Manning
NY Bar No. 4578068
Trial Attorney, Detailee
1400 New York Ave NW, 11th Floor
Washington, D.C. 20005
(202) 514-6256
Jason.Manning@usdoj.gov

Julie Bessler
PA Bar No. 328887
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
Julie.Bessler@usdoj.gov