# **AFFIDAVIT**

I, Aaron Dyke, being duly sworn, hereby state as follows:

1. I am a licensed attorney in Kentucky, who previously represented Damon Beckley in the U.S. District Court, District of Columbia federal criminal case – case number 1:21-CR-285.
2. I started work on Mr. Beckley's case on or about May 26, 2021.
3. During my representation of Mr. Beckley I met with him at my office on multiple occasions and spoke to him via phone on numerous occasions.
4. I provided Mr. Beckley with my personal cell phone number and spoke to him on my personal cell phone, as well as my office phone. I also communicated with him via text messages and emails.
5. During the course of my representation, I logged 199 total hours of work on Mr. Beckley's case, of which 33.5 hours were dedicated to meeting with, or speaking to Mr. Beckley.
6. During the course of my representation, the United States provided 18 separate discovery filings. Those filings were comprised with PDF documents, video evidence, social media postings, and other case related materials.
7. During my conversations with Mr. Beckley we discussed his version of the facts surrounding his case; the government's evidence provided in discovery; possible defenses that could be presented during a trial; the results of other related cases that had proceeded to trial; the results of other related cases that had resolved via plea agreements; and my advice with regard to the strengths and weaknesses of Mr. Beckley's proposed defense; the strengths and weaknesses of the government's case against Mr. Beckley; and my advice with regard to whether Mr. Beckley should proceed to trial or resolve his case in another manner.
8. During that process I had multiple conversations with the United States with regard to their initial plea offer; our counter-offer(s) to their original plea offer; and the idea of a stipulated trial.
9. Mr. Beckley was actively involved in all of those conversations.
10. Mr. Beckley was made aware that he could resolve his case by a jury trial, a bench trial, a stipulated trial, a plea agreement, or an open plea. Each one of those options were discussed at length.
11. On February 16, 2023, Mr. Beckley and I met in my office for approximately six (6) hours to go over the United States' proposed stipulations for a stipulated trial and to discuss whether Mr. Beckley wanted to proceed via a stipulated trial.
12. Mr. Beckley and I went over every single line of that document together and we made substantial proposed edits to that document. Mr. Beckley and I worked together to write the language that was sent to the United States.

13. The United States accepted the vast majority of the proposed edits and sent us a revised proposal for the stipulated facts. Mr. Beckley and I went over that document line by line as well.
14. Mr. Beckley also wanted video excerpts to be included in his stipulated trial. The United States was amenable to this suggestion, so Mr. Beckley and I worked together to determine which video clips he would like to be included.
15. I sent the United States our proposed video clips, and they largely accepted the video clips that were proposed by Mr. Beckley.
16. Prior to Mr. Beckley's stipulated trial, he had not only read all of the documents provided during his stipulated trial, but he had helped draft the language included within the documents.
17. Prior to Mr. Beckley's stipulated trial, he had not only viewed all of the video clips that would be shown during his stipulated trial, but he had helped select which portions of the videos would be presented.
18. Mr. Beckley made claims within his Motion for New Trial and Addendum to March 2nd, 2023 Motion for New Trial submitted by Damon M. Beckley, that the United States did not accept all of his proposed video exhibits. That claim is true. There were certain mitigating clips that the United States did not agree to include as exhibits to the stipulated trial – but Mr. Beckley was made aware of that fact prior to his stipulated trial and ultimately agreed to the video clips that were admitted. This issue was discussed on the record during the stipulated trial.
19. Mr. Beckley further claimed he had not seen each video provided within discovery in its entirety. Mr. Beckley and I did not view every video in its entirety together. We did however have numerous conversations about the video evidence provided in discovery. We discussed the difference between evidence that was incriminatory, evidence that was exculpatory, and evidence that was mitigating. I explained to him throughout his case that any and all mitigating evidence would be presented at a future sentencing hearing.
20. Mr. Beckley was very concerned about being able to present mitigating evidence – video evidence that his family had that showed what the United States Capitol looked like as they approached, his rationale for entering the Capitol, where they had been prior to arriving at the Capitol, and his assistance to law enforcement officers while he was in the Capitol. We spent hours discussing this evidence and whether it was best to present that evidence at a trial in his defense, or whether it was better to present that evidence as mitigation in a sentencing hearing.
21. I advised Mr. Beckley that I thought that it was in his best interest to proceed with the stipulated trial. I based that recommendation on the fact that I believed that the proof the United States would present at trial was sufficient to obtain a conviction for the charged offenses.
22. I based my opinion on the not only the evidence contained within the discovery provided by the United States, which was detailed in the agreed upon stipulated facts, but also on other the trial results of other defendants who had been in close physical proximity to Mr. Beckley in the Capitol who had proceeded to trial and been found guilty.

23. I also believed that that the stipulated trial was in Mr. Beckley's best interest because it allowed Mr. Beckley to receive the 3-level reduction for acceptance of responsibility, that he would likely otherwise lose if he proceeded to trial.
24. Mr. Beckley and I discussed other individuals that this Court had sentenced in January 6th related cases. We discussed the facts involved in those cases, and compared them to the facts involved in his case in order to attempt to predict what his ultimate sentence could be. We discussed the mitigating evidence that we would be able to produce in a future sentencing hearing and how it may impact his ultimate sentence.
25. After all of those conversations, Mr. Beckley agreed that he wanted to proceed with a stipulated trial.
26. We both traveled to Washington D.C. independently from one another, and met at the courthouse before his stipulated trial was scheduled to begin.
27. I again went over the documents with him and explained to him how the stipulated trial would proceed.
28. Mr. Beckley had several family members and friends with him at the stipulated trial. I introduced myself to each one of them and explained to them how the stipulated trial would go as well.
29. At no point during any of those conversations did I get the impression Mr. Beckley was unable to go forward with the stipulated trial, or that he did not want to proceed with the stipulated trial.
30. He did not mention that he had taken any medication prior to the stipulated trial. None of the other individuals who were with Mr. Beckley mentioned that he had taken any medication prior to the stipulated trial. His demeanor was similar to all of my prior interactions with him.
31. During the stipulated trial, one of the agreed upon video clips was not played in its entirety. Mr. Beckley told me he wanted me to explain to the Court what would have been seen if the clip were played in its entirety – which I did. Mr. Beckley did not notify me of any other objections.
32. After we had returned to Kentucky, Mr. Beckley notified me that he would like for me to file a Motion for a New Trial based on some medication that he had taken prior to the stipulated trial. He and I spoke via phone about the basis for this motion, and I explained to him that I would not be filing motion because I did not believe I had a legal basis for the motion. I also recommend that he not file the motion on his own.
33. After that conversation I emailed him to summarize our conversation (see Attachment). That conversation and email both took place on Tuesday March 7, 2023.
34. On March 8, 2023 Mr. Beckley filed his Motion for New Trial.
35. At no point did I coerce Mr. Beckley into resolving his case via a stipulated trial.
36. Mr. Beckley was advised of his right to a speedy trial, and consented to the continuances throughout the pendency of his case, and at no point in time did he inform me that he wished to object to the continuances in his case.
37. Throughout my representation of Mr. Beckley I diligently reviewed the discovery provided by the United States in an attempt to locate all inculpatory, exculpatory, and mitigating evidence. Mr. Beckley and I had numerous conversations about my advice

with how to proceed. Ultimately, I believed that the inculpatory evidence was sufficient for the United States to secure a conviction against Mr. Beckley and that any exculpatory and/or mitigation evidence was most helpful at the sentencing stage of Mr. Beckley's case.

38. I explained to Mr. Beckley that I did believe that there was a significant amount of mitigating evidence in his case and that at sentencing I would be prepared to call any/all witnesses on his behalf and to vigorously argue for a below-guideline sentence on his behalf.

*Aaron M Dyke*
Aaron Dyke

Subscribed and sworn to me
This 20th day of June 2023.

_____
Notary Public
My commission expires: 8.8 2023
ID #: 628455