**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> **v.** <br><br> **DAMON MICHAEL BECKLEY,** <br><br> **Defendant.** | **Criminal Action No. 21-285 (JEB)** |

<u>**MEMORANDUM OPINION**</u>

On February 23, 2023, Defendant Damon Beckley was convicted after a stipulated trial of obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and interfering with law-enforcement officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3). Representing himself, he now moves for a new trial, claiming that he has exculpatory evidence that was not shown at trial and that his lawyer, Aaron Dyke, was ineffective. Because Beckley's evidence is not exculpatory and his ineffective-assistance claim is inadequate, the Court will deny the Motion without a hearing.

**I.      Background**

The Court first details the facts presented at Beckley's stipulated trial. It relies on the evidence outlined in the Statement of Facts for Stipulated Trial, <u>see</u> ECF No. 56 (SOF), which Defendant previously agreed to. Both parties also agreed that the video evidence cited in the Statement of Facts is authentic. <u>Id.</u> at 6.

On January 6, 2021, a special joint session of Congress was held at the United States Capitol to certify the vote of the Electoral College in the 2020 presidential election. <u>Id.</u> at 3. During the proceedings, the Capitol and its exterior plaza were closed to the general public. <u>Id.</u> The session began around 1:00 pm, and a large crowd grew outside the Capitol throughout these

proceedings.  Id. at 3–4.  Seeking to disrupt the certification, members of this crowd circumvented safety barriers, assaulted police officers standing guard, and broke through building windows to force entry into the Capitol itself around an hour into the session.  Id. at 4. This breach of the Capitol resulted in the suspension of the proceedings and in the evacuation of lawmakers from their chambers, as well as costly damage to the building itself and property therein.  Id. at 4–5.

Beckley was among those rioting.  Id. at 5.  He was initially indicted in April 2021 on five counts, and in February 2023, the parties jointly moved to convert the jury trial to a stipulated bench trial.  See ECF No. 10 (Indictment); ECF No. 52 (Joint Motion).  In exchange, the Government agreed to proceed on only two counts: obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and civil disorder, in violation of 18 U.S.C. § 231(a)(3).  See SOF at 1–2.

To support Count I (Obstruction), the Government introduced several pieces of evidence demonstrating that Beckley knowingly and corruptly obstructed an official proceeding.  First, it presented social-media evidence of Beckley's intent, such as a December 2020 social-media post that read, "Congress should be pulled into the DC streets Khaddafi [sic] style."  Id. at 5.  Second, the Government presented video evidence demonstrating that Beckley entered the Capitol building on January 6 and made his way to the area near a door to the House chamber, where he announced that he had "permission to go into [the] room" to have his "grievances redressed like the Constitution says."  Id. at 6.  Third, the Government offered video footage of Beckley outside the East Rotunda Doors stating, "If we gotta come back here and start a revolution and take all of these traitors out, which is what should be done, then we will."  Id. at 7.

For Count II (Civil Disorder), the Government introduced video evidence demonstrating that Beckley knowingly and intentionally interfered with law-enforcement officers performing official duties during a civil disorder.  Id. at 2.  These videos showed that he entered the Capitol through the East Rotunda Door "while police officers were attempting to secure the Capitol."  Id. at 5.  While in the Capitol, Beckley told the crowd, "We have permission to go into [the House Chamber]" and made physical contact with an officer while inside.  Id. at 6.  He filmed his own video "through the shattered windows of the House Chamber door," which showed officers inside pointing firearms back at him.  Id.  When Beckley was being escorted out of the building, he told the officer, "[D]on't push on me, man, I'm moving."  Id. at 6–7.  Beckley then reentered the Capitol and remained inside despite the police's continued attempts to clear that area, leaving only when he was once more led out of the Capitol.  Id. at 7.

The parties agreed in proceeding with a stipulated trial that "if the Court finds the existence of [the stipulated] facts beyond a reasonable doubt, [the evidence in the stipulation] would establish each and every element of Count One and Count Two."  Id. at 9.  After reviewing the stipulated facts and video evidence during the trial, the Court found the facts to be true and "proven beyond a reasonable doubt given the stipulation that has been entered."  ECF No. 72-1 (Transcript of Stipulated Trial) at 22.  It adjudged Defendant guilty of both counts.  Id.  Two weeks later, on March 8, 2023, Beckley filed the Motion for New Trial at issue here.  See ECF No. 57 (Mot. New Trial).  The Court then granted his request to proceed pro se, and it permitted him to submit an Addendum to his Motion for New Trial on June 7.  See Minute Order of June 1, 2023; ECF No. 69 (Addendum to Mot. for New Trial).

## II.     Legal Standard

Rule 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A trial court "enjoy[s] broad discretion in ruling on a motion for a new trial."  United States v. Wheeler, 753 F.3d 200, 208 (D.C. Cir. 2014).  The D.C. Circuit counsels that "granting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred."  Id. (citation and internal quotation marks omitted).  Litigants must move for a new trial within 14 days of receiving a guilty verdict, but if the motion is based on newly discovered evidence, they may file within three years.  See Fed. R. Crim. P. 33(b).  Rule 33, nonetheless, is non-jurisdictional and must be read in conjunction with Rule 45(b), Eberhart v. US, 546 U.S. 12, 19 (2005), which permits courts to extend the time to file if the party "failed to act because of excusable neglect."  Fed R. Crim. P. 45(b)(1)(B).

Ineffective assistance of counsel may provide the basis for a Rule 33 motion.  See United States v. Doost, No. 17-109, 2019 WL 1560114, at *4–7 (D.D.C. Apr. 10, 2019) (discussing ineffective assistance of counsel as part of defendant's Rule 33 motion); United States v. La, 2022 WL 14812634, at *2, 5 (M.D. Tenn. Oct. 25, 2022) (granting motion to extend deadline to file Rule 33 motion premised on ineffective assistance of counsel).  Such a claim, however, may not "serve as the basis for a new trial motion under the 'newly discovered evidence' prong of Rule 33 where the facts alleged in support of the motion were known to the defendant at the time of trial."  United States v. Torres, 115 F.3d 1033, 1035 (D.C. Cir. 1997) (internal citations omitted) (finding agreement on topic among nine sister circuits).  If an ineffectiveness claim is time barred for the purposes of a Rule 33 motion, it may instead be brought after sentencing as a

collateral attack under 28 U.S.C. § 2255.  See id. (citing United States v. Ellison, 557 F.2d 128, 134 (7th Cir. 1977)).

To prevail on an ineffective-assistance-of-counsel claim, the defendant must demonstrate that: (1) "his counsel's performance was deficient" and (2) "the deficient performance prejudiced him."  United States v. Doost, 3 F. 4th 432, 436–37 (D.C. Cir. 2021) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The defendant bears the burden of demonstrating both elements, and failure to make the required showing for either prong defeats the claim.  See Strickland, 466 U.S. at 700.

Finally, a request for an evidentiary hearing may be denied if "the files and records of the case conclusively show that the prisoner is entitled to no relief."  United States v. Green, 680 F.2d 183, 184 (D.C. Cir. 1982) (quoting 28 U.S.C. § 2255(b)); see also United States v. Rodriguez, 2015 WL 1279472, at *9 (E.D. Pa. Mar. 19, 2015) (finding that evidentiary hearing for both Rule 33 motion and § 2255 motion was not necessary where "the Court is able to resolve the issues presented by a motion for a new trial pursuant to . . . the present state of the record").

III.    **Analysis**

Defendant asserts two main bases for a new trial: there is exculpatory evidence that was not presented at trial, and he received ineffective assistance of counsel.  For purposes of the latter, Beckley contends that his lawyer failed to present exculpatory evidence and that he unduly pressured him into a stipulated trial, all while Defendant was experiencing health issues.

One threshold issue is whether Defendant's arguments are untimely and thus must be considered only under the "newly discovered evidence" prong of Rule 33.  Because Beckley filed his original Motion for New Trial within 14 days of his guilty verdict, however, his original

request need not be so considered.  See Mot. New Trial at 1 (dated March 8, or 13 days

following guilty verdict issued at trial on February 23).  It is less clear, however, that his

Addendum, filed on June 7, can be similarly excused.  See United States v. Villalpanado, 259

F.3d 934, 937–38 (8th Cir. 2001) (finding Rule 33 motion timely where supplemental briefing

was requested by court and raised same argument as original motion); United States v. Cruz-

Padilla, 227 F.3d 1064, 1067–68 (8th Cir. 2000) (finding written Rule 33 motion to be timely

when it renewed a timely oral motion); but see United States v. Plaza, 2023 WL 3868275

(W.D.N.Y. June 7, 2023) (holding that co-defendant's letters requesting to join in Rule 33

motion based on grounds other than newly discovered evidence and filed more than 14 days after

verdict were untimely).  Given that Beckley is proceeding pro se and that he worked with the

Court to seek an extension of time to file an amended motion, the Court finds that the Addendum

can be seen, as in Cruz-Padilla, as a renewal of his original, timely motion.  See ECF No. 62

(Motion to Extend Deadline).  As such, the Court concludes that it need not be grounded solely

on newly discovered evidence.

A. Exculpatory Evidence

Defendant first asserts that the following pieces of evidence were not introduced in the

stipulated trial and would be exculpatory:

(1) Video evidence purportedly showing that Defendant helped "approximately 15 trapped and afraid police officers . . . on January 6th." Specifically, the alleged evidence shows him using a megaphone to "make a hole [in the crowd] so that the police could get out of the building." Addendum at 1–3.

(2) An NPR article about a Capitol Police officer who helped other officers trapped in the building on January 6, which Defendant alleges are the "same officers that I had been helping" and believes "completely corroborate[s]" his story regarding helping officers. Id. at 2–3.

(3) Video evidence purportedly showing that he "originally entered the building searching for one of the rallies' [sic] organizers[,]" and that

this was the reason for his "continued travel inside the building." Id. at 4.

(4) Video evidence purportedly showing that his party "had no knowledge of any violence happening" in the section of the Capitol in which he was present as well as his "calm demeanor upon . . . arrival." Id. at 5.

(5) "Google Maps timeline" evidence purportedly showing that "when parking near the Capitol [Building]" Defendant spoke with a police officer about "where [he] could park to avoid getting a parking ticket." Id.

The problem for Beckley is that none of this alleged evidence is actually exculpatory. Begin with Count I (Obstruction). A defendant impermissibly obstructs an official proceeding if he "corruptly[] obstructs, influences, or impedes any official proceeding, or attempts to do so." 18 U.S.C. § 1512(c)(2). The Court can quickly dispense with all but the third piece of evidence. These other facts, although perhaps interesting if true, do not negate Beckley's awareness of official proceedings and his intent to interfere with them as evidenced by comments he made before and during January 6. For example, he stated to officers inside the House Chamber, "[W]e just want our grievances redressed like the Constitution says"; after exiting, he stated, "We're not putting up with this tyrannical rule. If we gotta come back here and start a revolution and take all of these traitors out, which is what should be done, then we will." SOF at 6–7.

The only evidence that might shed light on his intent when entering the building is the third piece of evidence, which allegedly shows that he "originally entered the building searching for one of the rallies' [sic] organizers[.]" Addendum at 4. Even were the Court to accept such a farfetched claim, it would speak only to Defendant's decision to enter the Capitol building on one of two occasions, not his other willful intrusions on restricted parts of the Capitol grounds — intrusions that would alone be sufficient to constitute obstruction when coupled with the intent manifested by his statements. See United States v. McHugh, No. 21-453, ECF No. 108 (Transcript of Stipulated Bench Trial) at 45–47 (finding defendant who did not enter Capitol

building, but did assault officers, guilty on § 1512(c)(2) obstruction charge); <u>United States v. Mock</u>, No. 21-444, Minute Entry of July 12, 2023 (same); <u>see also</u> <u>United States v. Weyer</u>, No. 22-40, ECF No. 51 (Transcript of Bench Trial) at 52, 55–58 (finding defendant who claimed she entered Capitol building to look for her brother guilty of § 1512(c)(2) obstruction charges).

Turning to Count II (Civil Disorder), a defendant is guilty of civil disorder if he "commits or attempts to commit any act to obstruct, impede, or interfere with any . . . law enforcement officer" performing his official duties during a civil disorder.  <u>See</u> 18 U.S.C. § 231(a)(3).  While the first, second, and fifth pieces of evidence, if introduced, might speak to Beckley's efforts to peacefully engage with police officers, they do not negate the fact that he made "physical contact" with an officer while inside the building and repeatedly failed to comply with law-enforcement barriers and instructions.  <u>See</u> SOF at 6–7.  The third and fourth items have no relevance to this offense.  As a result, the new evidence falls well short of exculpation.

The Court cannot conclude that any of this evidence suggests that a "serious miscarriage of justice may have occurred" during Defendant's stipulated trial.  <u>See</u> <u>Wheeler</u>, 753 F.3d at 209.  As a result, it finds such evidence to be an inadequate basis for a new trial.

B.  <u>Ineffective Assistance of Counsel</u>

The Court examines the two strands of Beckley's ineffective-assistance argument separately.

1.  *Failure to Present Exculpatory Evidence*

An alternative use Defendant makes of his purported exculpatory evidence is to assert that Dyke's failure to present it at trial is indicative of his deficient performance.  <u>See</u> Addendum at 1 ("Mr. Dyke then chose to sit on the exculpatory evidence supplied to him by the prosecution and not notify me of its existence.").  Yet, given that the Court has just explained that none of the

evidence that Beckley wanted Dyke to present was exculpatory, neglecting to introduce it does not meet the deficient-performance prong of the <u>Strickland</u> test.  This is particularly true when combined with Defendant's own statements made under oath demonstrating satisfaction with Dyke's performance, Dyke's compelling affidavit detailing the time — 199 hours in total — he spent working with Defendant, and Beckley's failure to explain why counsel's legal strategy was unreasonable.  <u>See</u> Tr. at 10–11; ECF No. 72-2 (Exh. 2) (Affidavit of Aaron Dyke), ¶ 5.  As for the prejudice prong, given that the underlying evidence is not exculpatory, it cannot be said that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  The evidence confirming Beckley's culpability is already captured in the extensive video evidence presented at the stipulated trial, and presentation of the non-exculpatory evidence would have done nothing to change the outcome.

2.  *Decision to Enter into Stipulated Trial*

This takes us to the meat of Beckley's ineffectiveness claim: his assertions that he was pressured into a stipulated trial in the first place, and that health issues presented him from making a knowing and intelligent waiver of his right to a contested trial.  The Court is unconvinced by either of these claims.

Defendant first contends that Dyke coerced him into agreeing to a stipulated trial.  He explains that Dyke advised him thus:

> Out of 45 or 46 people convicted so far, there's only been one acquittal. It's in your best interest to do the stipulated trial. You'll get a better sentencing deal since the prosecution will lower your enhancements by 3 points for taking responsibility for your actions then we can argue to Boasberg at sentencing that you weren't as bad [as other January 6 Defendants].

Mot. at 5.  This advice is indeed corroborated by Dyke's affidavit, where he states that he and Beckley discussed "the results of other relevant cases that had proceeded to trial[,] . . . that had resolved via plea agreements[,] . . . [and] the strengths and weaknesses of the government's case against Mr. Beckley."  Dyke Aff., ¶ 7; see also id., ¶ 21.  After explaining these options, Dyke "advised Mr. Beckley that [he] thought it was in his best interest to proceed with the stipulated trial."  Id., ¶ 21.  None of this smacks of coercion.

Beckley next contends that Dyke "never mentioned that [he] could just do a trial before [the Judge]."  Mot. at 5.  Putting aside Dyke's affidavit asserting the opposite, Beckley cannot claim that he did not know about the option for a bench trial because this Court directly addressed the topic while he was under oath.  See Dyke Aff., ¶ 10; Tr. at 11 (The Court: "You understand that you do have the right to go to a jury trial or you could also have a bench trial in front of me if you wanted to?" Defendant: "Yes, Your Honor.").  Defendant concedes as much in both his Motion for a New Trial and its Addendum when he expresses gratitude to this Court for informing him of his right to a bench trial.  See Mot. at 5 (thanking the Court for "being exceptionally cordial to make [him] the offer to have the bench trial"); Addendum at 6 ("I appreciate His Honor, Judge Boasberg for telling me during the stipulated trial that I have a right to choose to do [a bench trial].").  According to Defendant, however, because of his health issues and over-the-counter-medications taken the day of the trial, he "could not concentrate" and "was not coherently answering [the Court's] questions."  Mot. New Trial at 4–5.  This brings us to Beckley's final assertion.

He claims that jaw pain, lack of sleep, Benadryl, and ibuprofen affected his ability to make a knowing and intelligent waiver of a non-stipulated trial.  Yet this claim stands in sharp contrast with the Court's thorough colloquy ensuring that Beckley was aware of his decision and

its impact, including a statement Beckley made under oath that he had not "taken any drugs or medications or anything else in the last two days that might make it difficult for [him] to follow these court proceedings." Tr. at 8.  This is corroborated by Dyke's affidavit attesting that Beckley's demeanor "was similar to" how it was in "all of [his] prior interactions with [Defendant]," that neither Defendant nor his family members present at trial "mentioned that he had taken any medication" prior to trial, and that he was asking "rational questions" on the day of the trial.  See Dyke Aff., ¶ 30; ECF No. 72-3 (Mar. 7 Email) at 1.  Finally, as the Government points out in its Opposition, the "combination of over-the-counter medicines and lack of sleep[] are so generic that, if [these claims] were to be accepted, they would significantly undermine the public interest in the finality of criminal judgments."  ECF No. 72 (Opposition) at 23.  The Court accordingly finds that Defendant's decision to proceed with a stipulated trial was knowingly and intelligently made.

Having found that Counsel did not pressure Defendant into a stipulated trial, that Beckley was aware of the option to have a bench trial before the stipulated trial began, and that his decision to enter into a stipulated trial was knowing and intelligent, the Court rejects Defendant's ineffective-assistance claim.

## IV.    Conclusion

For these reasons, the Court will deny Defendant's Motion for a New Trial without an evidentiary hearing.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 14, 2023