UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAMON MICHAEL BECKLEY,<br><br>Defendant. | Criminal Action No. 21-285 (JEB) |

**MEMORANDUM OPINION**

On February 23, 2023, after a stipulated bench trial, the Court found Defendant Damon Beckley guilty of obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and interfering with law-enforcement officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3). Both counts relate to his conduct on January 6, 2021. Representing himself, Beckley moved for a new trial within a couple of weeks, claiming that he had found exculpatory evidence that was not shown at trial and that his lawyer, Aaron Dyke, was ineffective. See ECF No. 57 (1st Mot. for New Trial). The Court denied the Motion without a hearing, concluding that the evidence was not exculpatory and his ineffective-assistance claim was inadequate. United States v. Beckley, 2023 WL 4547990 (D.D.C. July 14, 2023).

Still representing himself at the time — although he has since retained counsel — Beckley filed two more Motions: one for a new trial (again) and one to compel production of discovery and grand-jury materials. See ECF Nos. 79 (2nd Mot. for New Trial); 80 (Mot. to Compel). In support of the former, Defendant renews his prior claims that he has uncovered new exculpatory evidence and that he received ineffective assistance of counsel, mostly rehashing — in a bit more detail — arguments that this Court has already rejected. As to the latter, Beckley requests certain grand-jury materials and the discovery that the Government produced to his

1

former counsel. Unpersuaded that either Motion has merit, the Court will deny both without a hearing.

**I.      Legal Standard**

Rule 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." A trial court "enjoy[s] broad discretion in ruling on a motion for a new trial." United States v. Wheeler, 753 F.3d 200, 208 (D.C. Cir. 2014). The D.C. Circuit counsels that "granting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred." Id. (citation and internal quotation marks omitted). Litigants must move for a new trial within 14 days of receiving a guilty verdict, but if the motion is based on newly discovered evidence, they may file within three years. See Fed. R. Crim. P. 33(b).

Ineffective assistance of counsel may provide the basis for a Rule 33 motion. See United States v. Doost, 2019 WL 1560114, at *4–7 (D.D.C. Apr. 10, 2019), aff'd, 3 F.4th 432, 436–37 (D.C. Cir. 2021) (discussing ineffective assistance of counsel as part of defendant's Rule 33 motion); United States v. La, 2022 WL 14812634, at *2, 5 (M.D. Tenn. Oct. 25, 2022) (granting motion to extend deadline to file Rule 33 motion premised on ineffective assistance of counsel). To prevail on an ineffective-assistance claim, the defendant must demonstrate that: (1) "his counsel's performance was deficient," and (2) "the deficient performance prejudiced him." Doost, 3 F.4th at 436–37 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The defendant bears the burden of demonstrating both elements, and failure to make the required showing for either prong defeats the claim. See Strickland, 466 U.S. at 700.

**II.     Analysis**

The Court begins with Beckley's Motion for a New Trial before turning to his Motion to Compel the production of various materials.

A.   <u>Motion for New Trial</u>

Defendant's second attempt at obtaining a new trial rests on the same two grounds as his first: (1) there is exculpatory evidence that was not presented at trial, and (2) he received ineffective assistance from his counsel.  <u>See</u> ECF No. 82-1 (Affidavit of Damon Michael Beckley).

1.   *Exculpatory Evidence*

Defendant initially contends that the following pieces of evidence that were not introduced in the stipulated trial would have been exculpatory:

> (1) Video evidence purportedly showing Defendant "getting the crowd on the steps" of the Capitol on January 6 "to make room for . . . officers to be able to safely pass through" after an officer asked him to "make a hole." <u>Id.</u> at 7, 10.  Specifically, the alleged evidence shows Beckley "clear[ing]" an area of the crowd, "go[ing] back" to tell an officer that "it had been cleared," and then "repeat[ing]" that process "several times" so that "the officers could make it safely to the ground." <u>Id.</u> at 9.
> (2) An NPR article about a Capitol Police officer who helped other officers trapped in the building on January 6, which Defendant alleges "corroborate[s]" his story regarding providing "assistance to the same group of officers." <u>Id.</u> at 2.
> (3) Video evidence purportedly showing that Defendant went "into the building looking for Alex Jones to find out what [the crowd was] supposed to be doing." <u>Id.</u> at 8.  In particular, it allegedly depicts Beckley "shouting to ask people in the crowd on the East Rotunda Porch" about Jones's "whereabouts" and someone answering, "He's in the building." <u>Id.</u> at 10.
> (4) "Google timeline" evidence purportedly showing that "[j]ust before parking" near the Capitol on January 6, Defendant spoke with a police officer "to make sure it was legal to park there." <u>Id.</u> at 10– 11. He allegedly "told her [that he and his wife] were there for the rally but she did not inform [him] that it had turned into a riot shortly before and that it was likely not safe to be there." <u>Id.</u> at 11.

> (5) "Google timeline" evidence purportedly showing that Defendant was not in D.C. on January 5, 2021, and a photograph of "a man with an uncanny resemblance to [Beckley] who was photographed being in DC on January 5th, 2021" and allegedly misidentified by the Government as Defendant. Id. at 10.

The problem for Beckley this time around is the same one he faced last time: even assuming that this alleged evidence is "newly discovered" for purposes of Rule 33, none of it is actually exculpatory. The first four pieces of evidence are the same — albeit presented in more detail — as material to which Beckley pointed in his first Motion for a New Trial. Compare id. at 2, 8–11, with ECF No. 69 (Addendum to 1st Mot. for New Trial) at 1–5. The Court already explained why such items "fall[] well short of exculpation" and hence will not spill any more ink reiterating that explanation here. Beckley, 2023 WL 4547990, at *3–4.

The fifth piece of evidence, which Beckley did not include in his first Motion, simply has no bearing on his guilt. That is because Defendant was charged and convicted for his conduct on January 6, 2021, not the day before. And he does not dispute that he was "properly identified in all the stipulated facts related to his conduct" on January 6 or that "he was accurately identified in all the videos shown during the stipulated trial." ECF No. 83 (Opp.) at 6. Evidence that he was not in D.C. on January 5, accordingly, has no relevance to his offenses.

The Court thus concludes, as it did before, that none of Beckley's evidence suggests that a "serious miscarriage of justice may have occurred" during his stipulated trial. Wheeler, 753 F.3d at 208 (citation omitted). Such evidence is therefore an insufficient basis for a new trial.

2. *Ineffective Assistance of Counsel*

Defendant next renews his submission that Dyke provided ineffective assistance, this time presenting three strands of argument, the first two of which are familiar.

4

First, Beckley maintains that Dyke was deficient because he failed to forward the aforementioned purportedly exculpatory evidence to the Government or present it at trial. See, e.g., Beckley Aff. at 2 ("I texted the NPR article to Mr. Dyke, but he, to my knowledge, did not forward said article to the DOJ on my behalf (as I begged him to do) for verification and to be entered as evidence to corroborate my testimony . . . ."). Yet, given that none of the evidence that Beckley wanted Dyke to forward or present was exculpatory, as the Court has explained above and in its prior Opinion, neglecting to introduce it was neither deficient nor prejudicial. See Beckley, 2023 WL 4547990, at *5 (citing Strickland, 466 U.S. at 694).

Second, Defendant recapitulates his previous claims that he was coerced into a stipulated trial in the first place, and that health issues prevented him from making a knowing and intelligent waiver of his right to a contested trial. See Beckley Aff. at 1; see also, e.g., id. at 3 (asserting that jaw pain, lack of sleep, pain pill, Benadryl, and ibuprofen affected decision to proceed with stipulated trial); id. at 6 (claiming that Dyke "absolutely intimidated [Beckley] into signing on for the stipulated trial with [Dyke's] narrative of the situation [Beckley] was facing being very unfavorable for [him]"). The Court has already considered and rejected those claims, see Beckley, 2023 WL 4547990, at*5–6, which are no different — and have no more merit — the second time around.

Finally, Beckley asserts that Dyke failed to inform him that the Government had produced "167 items of discovery" or provide him with the opportunity to review those materials. See Beckley Aff. at 1. Unlike the prior two strands of argument, this one is new. Indeed, Beckley explains that he did not know that such discovery materials existed until finding them online this past fall, after the Court had already ruled on his first Motion for a New Trial. See id. at 1 (claiming that, in September 2023, he "found that the DOJ had sent . . . Dyke[] some

167 items of discovery, a fact that until perusing courtreporter.org was previously completely unknown to [him]"); id. ("This truth of the government's 167 item discovery being disclosed to Mr. Dyke was never discussed with neither my wife nor I, by him, nor anyone else from his office . . . ."); id. at 4 (similar).

Fresh as it may be, this argument does not carry the day for Defendant. Even setting aside Dyke's affidavit stating that he did discuss with Beckley "the government's evidence provided in discovery," ECF No. 72-2 (Affidavit of Aaron Dyke), ¶¶ 7, 19, and assuming that Beckley could satisfy the deficient-performance prong of the Strickland test, he has not made the showing required as to prejudice. Crucially, Beckley does not claim that the Government's production contained exculpatory evidence or otherwise explain how the result of his trial would have been any different had Dyke shown him the evidence that the Government produced. See Beckley Aff. at 1, 3, 4 (repeatedly asserting that Dyke failed to discuss the "167 items of discovery" with Defendant without demonstrating any prejudice).

The closest he comes is in his Reply (which the Court considers even though Beckley filed it himself, despite now having retained counsel), when he submits that "there had to be exculpatory evidence to support [his] claims [of] helping the Capitol Hill Police." ECF No. 94 (Reply) at 2. But, as the Court explained in its previous Opinion, evidence of Beckley's "helping" officers would not "negate Beckley's awareness of official proceedings and his intent to interfere with them as evidenced by comments he made before and during January 6" or "the fact that he made 'physical contact' with an officer while inside the building and repeatedly failed to comply with law-enforcement barriers and instructions." Beckley, 2023 WL 4547990, at *4 (citing ECF No. 56 (Statement of Facts for Stipulated Trial)). The evidence that Beckley

6

believes must exist — and, it seems, hoped to find in the Government's production — simply would not have been exculpatory.

Even assuming that Dyke performed deficiently under the Sixth Amendment, then, the Court is not persuaded that such deficiency prejudiced Beckley in light of all the evidence that was presented at trial. See id. at *1–2, 5 (describing the evidence, including "extensive video evidence," that "confirm[ed] Beckley's culpability"). It cannot be said "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Beckley's ineffective-assistance claim hence provides no more fertile ground for a new trial than his allegedly newly discovered evidence. The Court, accordingly, will deny his Motion.

B. Motion to Compel

Beckley also asks the Court to order the Government to provide him with (1) "the [g]rand [j]ury notes pertaining to newly discovered evidence that the DOJ had presented [the grand jury] with false evidence claiming that [Defendant] was in the District of Columbia on January 5th, 2021," Mot. to Compel at 1, and (2) the 167 items of discovery that the Government produced to Dyke. Id.; see also Beckley Aff. at 1, 5. The Government urges the Court to deny the Motion because it has already "made available either to him directly or to him through his [then-]standby counsel" all of the materials that Beckley is seeking. See Opp. at 7.

To start, the Government produced to him "the grand jury transcripts and exhibits in connection with both the initial and superseding indictment" on December 10, 2023. Id.; see also Reply at 1 (acknowledging that since filing his Motion, Defendant had received the grand-jury materials). As to the first category of materials, there is thus nothing left for the Government to produce.

7

As for the second, the Government represents that it produced all case-specific discovery to Beckley's previous counsel, Dyke, and confirmed that his former standby counsel had received it. See Opp. at 7. And, it says, it "made all of the global discovery from the Capitol Riot cases available to standby counsel" as well. Id. That Beckley does not possess the documents himself is of no moment, particularly since, as Government emphasizes, it placed him on notice through a discovery memo that as a *pro se* defendant he would not have unfettered access to materials. See Opp. at 9; see also id. ("[S]ubject to the terms of the protective order, standby counsel can use their own licenses for the [Federal Public Defender for the District of Columbia] instance of evidence.com to share videos with non-detained *pro se* defendants . . . ."); id. ("[T]he government will not agree to providing *pro se* defendants unfettered access to FPD's Relativity workspace."); cf. ECF No. 16 (Protective Order), ¶¶ 4–6 (establishing, *inter alia*, rules for handling "Highly Sensitive" materials, including that Defendant cannot possess "Highly Sensitive" materials).

Beckley does not dispute that the Government already produced the discovery materials he seeks. See Beckley Aff. at 4 ("We now realize that (to the best of our current knowledge[])[,] the government did their job correctly in providing [the] discovery . . . ."). Instead, Beckley asks the Court to order the Government to provide discovery materials directly to him because, he says, neither Dyke nor Staff invited him to "personally view any of the discovery whatsoever in [his] case." Reply at 2; see also id. ("[N]either of these two counselors ever scheduled an appointment for me to view either sensitive or highly sensitive materials (under supervision[])[,] except for the few select videos that Aaron Dyke had selected."); id. at 5 (similar).

At the end of the day, while the Court understands Defendant's desire to view the discovery that the Government produced, the Government is not obligated to re-produce directly

to Defendant materials that it has already produced.  Beckley may view whatever discovery he likes by coordinating with his (newly retained) counsel.  Cf. United States v. White, No. 21-563, ECF No. 45 (D.D.C. Oct. 17, 2022) (appointing standby counsel, over defendant's objection, "solely for the limited purpose of facilitating her access to discovery").  Because there is nothing left to compel the Government to produce as to this category of materials either, the Motion does not succeed.

### III.  Conclusion

For these reasons, the Court will deny Defendant's Motion for a New Trial and Motion to Compel without an evidentiary hearing.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  January 23, 2024